In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-1653

GEORGE TOMANOVICH,

*Plaintiff-Appellant*,

*v.*

CITY OF INDIANAPOLIS and INDIANA DEPARTMENT
OF TRANSPORTATION,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 02 C 1446—**Richard L. Young**, *Judge.*

ARGUED APRIL 12, 2006—DECIDED AUGUST 8, 2006

Before POSNER, RIPPLE, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* George Tomanovich sued the City
of Indianapolis and the Indiana Department of Transporta-
tion, alleging that they retaliated against him for engaging
in protected activity in violation of Title VII. Tomanovich
also alleged that the City blacklisted him in violation of
Indiana Code 22-5-3-1. The district court granted the
defendants summary judgment. Tomanovich appeals. We
affirm.

**I.**

George Tomanovich first began working for the City of Indianapolis ("the City") in 1976. He left the City's employ in the 1990's, but was rehired in March 2000 as the Natural Resources Manager for the City's Department of Parks and Recreation. In July 2000, Tomanovich transferred to the City's Department of Asset Management, where he worked as a Senior Project Engineer. Tomanovich again changed jobs in July 2001, when he joined the City's Department of Public Works ("DPW") Engineering Division as an Administrator of Construction Services.

In early 2002, Mona Salem became the Deputy Director of the DPW and Tomanovich's direct supervisor. A few months after Salem took over as Tomanovich's boss, he filed an internal complaint against Salem because he believed there was inequity between his salary and the salaries of five other individuals in his section. The City denied the grievance. Tomanovich then filed a second grievance against Salem for harassment. The City also denied this grievance.

On June 3, 2002, Salem issued Tomanovich a written notice of unacceptable performance. In this notice, Salem identified four areas of deficiency, specifically Tomanovich's (1) failure to perform his duties in a satisfactory manner, including untimely completion of his duties, canceling certain meetings, and failing to obtain pre-approval for actions he had taken; (2) failure to conform to established work standards or supervisory orders by not submitting weekly reports; (3) failure to show courtesy and respect to his supervisor and other DPW employees; and (4) failure to exercise good judgment as a manager. Based on these deficiencies, Salem placed Tomanovich on a Performance Improvement Plan.

A little over a month later, on July 10, 2002, Tomanovich filed his first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In that charge, Tomanovich alleged that the City was retaliating against him for engaging in protected activity. On August 23, 2002, Salem issued an Updated Notice of Unacceptable Performance to Tomanovich. This notice noted some areas of improvement, but also identified five areas for improvement in his management skills. The notice also warned him that "failure to sustain the expected level of performance may result in termination without additional notice."

While still working for the City, Tomanovich filed suit under Title VII against the City, Salem, and three other employees on September 18, 2002. Tomanovich later failed to attend a November 4, 2002, meeting with Salem at which Salem was to review his performance. Then, on November 12, 2002, the City fired Tomanovich. Tomanovich responded by filing a second charge of discrimination with the EEOC alleging that after he filed his first charge of discrimination, Salem "began intensifying her scrutiny of my work." He further claimed that the City retaliated against him by refusing to consider him for other positions within City government.

On February 4, 2003, Tomanovich applied for the position of Construction Engineer Trainee with the State of Indiana Department of Transportation ("INDOT"). To apply for the position, Tomanovich had to complete a written application which, among other things, required him to authorize INDOT to contact his former employers. For work experience, Tomanovich listed, among other jobs, his most recent employment as Administrator of Construction Services with the City. He stated that the reason for leaving that position

was "separation of employment." The "Work Experience" section of the Application noted that "[e]xperience that cannot be confirmed is not acceptable."

At the time that Tomanovich applied for the Construction Engineer Trainee position he was also a candidate for Indianapolis City Council. Not knowing of his candidacy, on March 13, 2003, Stephen Risch of INDOT's Greenfield District Office offered Tomanovich the job of Construction Engineer Trainee. Once the candidacy was discovered, however, INDOT's Chief Legal Counsel Kelly Whiteman concluded that Indiana law prohibited an INDOT employee holding an engineering position from running for elected office. As a consequence, on March 19, 2003, Whiteman rescinded INDOT's offer to Tomanovich by letter, informing him of the statutory prohibition against INDOT engineers running for elected office.

In response, Tomanovich withdrew his candidacy for City Council and, on March 20, 2003, he faxed a copy of his formal withdrawal to Whiteman. The next day INDOT contacted the City to verify Tomanovich's employment history. INDOT'S Human Resources Division Chief, Jane Trout, contacted Barbara Lawrence, whom Tomanovich had listed as his Supervisor at the City, but Lawrence indicated that she could not answer any of Trout's questions about Tomanovich due to pending litigation. Trout then contacted the City's Human Resources Division, but the City refused to provide any information as to Tomanovich's prior employment, other than his dates of employment.

Around this same time, Vaneetta Kumar, a deputy commissioner with INDOT, asked Trout whether INDOT was "hiring someone by the name of Tomanovich." Trout answered in the affirmative and Kumar, who had previously worked for the City, then responded that "there

were some issues with that." Trout then sent an email to Risch telling him not to make an offer to Tomanovich, stating "[t]here's problems." A couple of days later, Trout told Risch "[w]e are not going to hire Mr. Tomanovich."

On March 24, 2003, Tomanovich called Risch and Risch told him his employment with INDOT was still "on hold." After additional attempts to obtain information on Tomanovich's employment with the City failed, on May 15, 2003, Whiteman sent Tomanovich a letter stating that INDOT "performed a routine check of your employment history. Your previous employer, the City of Indianapolis, refused to provide any information other than your dates of employment. Because we are unable to verify any information regarding your job performance, we have decided that no further offers will be forthcoming."

Tomanovich responded by amending his discrimination complaint. In his amended complaint, in addition to his retaliation claim against the City, Tomanovich added a claim against INDOT for retaliation. Tomanovich also added a claim against the City, alleging that Indianapolis blacklisted him in violation of Indiana Code 22-5-3-1.[1] The City and INDOT moved for summary judgment. The district court granted their motions. Tomanovich appeals.

---

[1] Tomanovich also alleged Salem (who is a Muslim from Egypt), acting on behalf of the City, discriminated against him on the basis of his ethnicity (he is Serbian) and on the basis of his age. Before the district court, however, Tomanovich conceded that the City was entitled to summary judgment on those claims, and those claims are not before this court on appeal.

## II.

On appeal, Tomanovich argues that the district court erred in granting the defendants summary judgment on his retaliation claims. We review a district court's grant of summary judgment de novo, viewing all of the facts and drawing all reasonable inferences in favor of the nonmoving party. *Lim v. Trs. of Ind. Univ.*, 297 F.3d 575, 580 (7th Cir. 2002). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). This type of discrimination is commonly called "retaliation." "A plaintiff may prove retaliation by using either the direct method or the indirect, burden-shifting method." *Moser v. Ind. Dept. of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005). Under the direct method, a plaintiff must show that "(1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by the employer; and (3) [there was] a causal connection between the two." *Id.* To prove retaliation under the "indirect method, the plaintiff must establish a prima facie case of retaliation by showing that: (1) [ ]he engaged in a statutorily protected activity; (2) [ ]he met the employer's legitimate expectations; (3) [ ]he suffered an adverse employment action; and (4) [ ]he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Id*. "If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to present evidence of a non-discriminatory reason for its employment action." *Adusumilli v. City of Chicago*, 164 F.3d 353, 362 (7th Cir.

1998). "If the employer meets its burden, the burden shifts back to the plaintiff to demonstrate that the employer's reason is pretextual." *Moser*, 406 F.3d at 904. Tomanovich asserts on appeal that he presented sufficient evidence to avoid summary judgment under both the direct and indirect methods. We consider each defendant and each method of proof in turn.

## A.  The City

### 1.   The Direct Method

Tomanovich argues on appeal that he presented sufficient evidence under the direct method that the City retaliated against him so as to avoid summary judgment. As noted, under the direct method, Tomanovich must prove that he (1) engaged in a statutorily protected activity; (2) suffered an adverse employment action; and (3) that a causal connection exists between the two. *Id.* at 903.

As to the first element, Tomanovich points to the three charges of discrimination he filed with the EEOC, noting "[o]bviously, the filing of a charge of discrimination satisfies the first element . . . ." Of course, he is right. *See Ajayi v. Aramark Bus. Serv., Inc.*, 336 F.3d 520, 533 (7th Cir. 2003) (holding that there is "no dispute that [the plaintiff] satisfied the first element by filing her EEOC charge"). Therefore, Tomanovich presented sufficient evidence to satisfy the first prong of the direct method.

However, in his brief, in arguing that he presented sufficient direct evidence of retaliation, Tomanovich also focused on the internal grievance he filed with the City on March 26, 2002, claiming "discriminatory treatment with respect to his pay," and a "second grievance regarding sexual harassment" on April 25, 2002. Although filing an

official complaint with an employer may constitute statuto-
rily protected activity under Title VII, the complaint must
indicate the discrimination occurred because of sex, race,
national origin, or some other protected class. *See Gleason v.
Mesirow Fin., Inc.*, 118 F.3d 1134, 1147 (7th Cir. 1997). Merely
complaining in general terms of discrimination or harass-
ment, without indicating a connection to a protected class or
providing facts sufficient to create that inference, is insuffi-
cient. *Id.* (holding that the plaintiff's general complaint
about management style without raising the subject of
sexual harassment fails to constitute protected activity);
*Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 727 (7th Cir.
2003) (affirming the district court's grant of summary
judgment to the employer on the plaintiff's retaliation claim
because the plaintiff's complaint to his employer "did not
invoke any action protected by Title VII"); *Miller v. Am. Fam.
Mut. Ins.*, 203 F.3d 997, 1008 (7th Cir. 2000) (holding that the
plaintiff did not engage in a protected activity where "[h]er
complaints instead concerned a *general* displeasure with
being paid less than her co-workers given her longer tenure
and the fact that she had trained some of them . . ." and not
discrimination related to a protected class).

In this case, in complaining about pay discrimination,
Tomanovich did not claim that the discrimination resulted
from his national original or his membership in another
protected class. In fact, in his deposition, Tomanovich stated
that he did not believe his salary was tied to his national
origin or his relationship with Salem. Additionally, while in
his brief Tomanovich claims he complained about "sexual
harassment," the record reference Tomanovich cites does
not support his characterization of this grievance as a
complaint about sexual harassment. Rather, Tomanovich
cites to a single page in his deposition, wherein he stated
that he spoke with the City regarding "issues of harass-

ment." Tomanovich fails to point to any evidence that in complaining to the City he indicated the alleged harassment was based upon his sex or was sexual harassment. Accordingly, neither the March 26, 2002, nor the April 25, 2002, grievance constitutes "protected activities" for purposes of Title VII's anti-retaliation provisions. *See, e.g., Gleason*, 118 F.3d at 1147; *Sitar*, 344 F.3d at 727; *Miller*, 203 F.3d at 1008.

As to the second element, Tomanovich points to numerous events that he claims constitute adverse actions, including his placement on a Performance Improvement Plan on June 3, 2002; his updated notice of unacceptable performance on August 23, 2002; his firing on November 12, 2002; the City's subsequent refusal to rehire Tomanovich; and the City's refusal to provide INDOT with details of his performance record with the City.

Tomanovich, however, did not file his first charge of discrimination with the EEOC until July 10, 2002, and, thus, the City's prior decision to place Tomanovich on a performance plan on June 3, 2002, could not have been retaliatory for the later EEOC filings.[2] (And as noted, the internal complaints failed to constitute "protected activities.") On August 23, 2003, several weeks after Tomanovich filed this first charge with the EEOC, Salem issued to Tomanovich an Updated Notice of Unacceptable Performance. It is ques-

---

[2] In his brief, Tomanovich claims that Salem wanted to terminate him in June 2002, and that around that time Salem directed that Tomanovich's office telephone and office computer network be disconnected. Tomanovich then claims that on June 3, 2002, he felt he "had already been terminated." However, if Tomanovich was, in fact, terminated on June 3, 2002, that would be before he filed his first EEOC claim, and thus his retaliation claim for his discharge would fail.

tionable whether updating Tomanovich's Notice of Unacceptable Performance constituted "a materially adverse action." *See Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2415 (2006) (holding that to state a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination") (internal quotations omitted). Firing Tomanovich, however, clearly constituted a materially adverse action, and the City fired Tomanovich on November 12, 2002, which was after Tomanovich filed his complaint with the EEOC on July 10, 2002, and filed suit on September 18, 2002. The question then is whether Tomanovich satisfied the third prong under the direct method, namely, whether Tomanovich presented direct or circumstantial evidence that a causal connection exists between his filing of the complaint and his later termination. *Moser*, 406 F.3d at 903.

Tomanovich claims that the timing of his firing constitutes circumstantial evidence to establish the requisite causal connection, pointing to the proximity between his filing a complaint with the EEOC on July 10, 2002, and filing a lawsuit against the City under Title VII, on September 18, 2002, and his termination on November 12, 2002. However, "suspicious timing alone rarely is sufficient to create a triable issue*." Moser*, 406 F.3d at 905. Moreover, while "[t]here is no bright-line rule as to the amount of evidence necessary to survive summary judgment under the direct method, . . . it is clear that mere temporal proximity is not enough to establish a genuine issue of material fact." *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 981 (7th Cir. 2004).

Here, more than four months elapsed between the time that Tomanovich filed his complaint with the EEOC and his firing. This court has held a temporal connection of four months failed to establish a causal connection between a protected activity and an adverse action. *See, e.g., Longstreet v. Ill. Dep't. of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002) (holding that even had plaintiff shown an adverse action, a four-month proximity was insufficient to establish a causal connection); *see also Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 919 (7th Cir. 2000) (holding that a three-month gap alone could not reasonably support a causal connection for a retaliation claim). Although only two months expired between Tomanovich's lawsuit and his firing, in this case the City had placed Tomanovich on a performance plan in June, noting several performance problems. While the City updated Tomanovich's performance problems in August, which is after he filed his first complaint with the EEOC, there is nothing suspicious about this timing. Before Tomanovich filed his complaint with the EEOC, the City informed Tomanovich that it would update the Notice, indicating areas of notable improvement as well as areas which still required attention. Under these circumstances, this is not the rare case in which temporal proximity, without more, established a causal connection. *See Moser*, 406 F.3d at 905 (explaining that "numerous incidents brought [employee's] professionalism and ability . . . into question" and thereby undermined any inference of suspicious timing); *Juarez v. Ameritech Mobile Commc'n, Inc.*, 957 F.2d 317, 321-22 (7th Cir. 1992) (holding that the "timing of the complaints, standing alone, d[id] not create a genuine issue as to a causal connection" when plaintiff "presents no evidence to suggest that [those] who complained of her deficient performance were lying or that their motives in

making those complaints were improper").[3]

Tomanovich also claims that the City retaliated against him by refusing to re-hire him and then by failing to provide INDOT with details concerning his employment at the City, thus preventing him from obtaining a job with INDOT. Again, Tomanovich relies solely on the timing as evidence of a causal connection. In addition to the July 10, 2002, complaint, Tomanovich filed two additional discrimination charges with the EEOC on January 22, 2003, and April 11, 2003. Tomanovich does not specify the date on which he attempted to obtain another position with the City, but it was towards the end of March 2003 when the City refused to provide information on Tomanovich's performance to INDOT. This timing alone, however, is insufficient to create a factual issue under the direct method. *See, e.g., Moser*, 406 F.3d at 905; *Wyninger*, 361 F.3d at 981. Moreover, where pending litigation indicates that an employee disputes the reason his employer gives for firing him, an employer acts prudently, and not retaliatorily, in limiting the information provided to inquiring employers to objective facts, such as the dates of employment, the job title, etc.

---

[3] Moreover, even if the internal complaints Tomanovich filed on March 26, 2002, and April 25, 2002, constituted "protected activities," Tomanovich still failed to establish a causal connection between those complaints and his firing in November, 2002. *See Adusumilli*, 164 F.3d at 363-64 (holding that plaintiff failed to establish causal connection where plaintiff complained about co-worker's sexual harassment in January, plaintiff was placed in the Behavior Alert program in March and terminated in September, because the sequence of events did not raise the inference of a causal connection, and the plaintiff failed to show that she was fired in retaliation for her complaint rather than for her inability to do her job well).

*Cf. Dranchak v. Akzo Nobel Inc.*, 88 F.3d 457, 460-61 (7th Cir. 1996) (rejecting plaintiff's retaliation claim, noting that an employer did not have an obligation to provide glowing recommendation of former employee).

### 2.    The Indirect Method

Alternatively, Tomanovich asserts that he presented sufficient evidence of retaliation under the indirect method. As noted above, to prove retaliation under the "indirect method, the plaintiff must establish a prima facie case of retaliation by showing that: (1) [ ]he engaged in a statutorily protected activity; (2) [ ]he met the employer's legitimate expectations; (3) [ ]he suffered an adverse employment action; and (4) [ ]he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Moser*, 406 F.3d at 903.

The district court concluded that Tomanovich failed to establish a prima facie case of discrimination under the indirect method because he did not show that he was treated less favorably than others who had not engaged in statutorily protected activity. On appeal, the City argues that Tomanovich also failed to establish a prima facie case of retaliation because Tomanovich was not meeting the City's legitimate expectations. The evidence supports both conclusions. First, the City presented evidence that Tomanovich did not meet its legitimate expectations in several respects, including through his insubordinate conduct. For instance, the City points out that Tomanovich was insubordinate by refusing to stay for the entire meeting Salem held on June 3, 2002, to review his performance. Tomanovich does not claim otherwise. Tomanovich also admits that he refused to attend a November 4, 2002, meeting with Salem to review his

performance. Tomanovich claims he decided it was best not to attend the meeting so as to avoid a confrontation. That, however, was not Tomanovich's decision to make, and his admission to the conduct at issue prevents him from establishing that he was meeting the City's legitimate expectations. *See, e.g., Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 824 (7th Cir. 2006) (holding that the defendant is entitled to summary judgment because the plaintiff admitted the conduct which the employer proffered as its reason for terminating the plaintiff).

To establish a prima facie case of retaliation, Tomanovich also needed to present evidence that a similarly situated employee who had not engaged in statutorily protected activity was treated more favorably. *Moser*, 406 F.3d at 903. On appeal, Tomanovich points to Mario Mazza, who worked for the City's DPW engineering division and who was terminated in October 2001, only to be re-hired two months later. Conversely, Tomanovich claims that when he sought to reapply with the City, the City refused to consider his application because it had a policy of not re-hiring a terminated employee within a year of the termination. Tomanovich argues that because Mazza did not file a charge of discrimination and was rehired, that shows that a similarly situated individual was treated differently. There are two problems with Tomanovich's argument. First, he did not point to any evidence on appeal concerning the other positions for which he attempted to apply, and thus, he cannot show that he was qualified for those positions. *See Hasan v. U.S. Dep't. of Labor*, 400 F.3d 1001, 1004 (7th Cir. 2005) (explaining that the plaintiff's burden "is to show that after filing the charge that he claims provoked the retaliation, only he, and not any similarly situated job applicant who did not file a charge, was not hired *even though he was qualified* for the job for which he was applying") (emphasis

added); *Volovsek v. Wis. Dep't. of Agr., Trade & Consumer Prot.*, 344 F.3d 680, 692 (7th Cir. 2003) (noting that the indirect method of proving retaliation requires, among other things, the plaintiff to establish that she was qualified for the position). Second, Tomanovich did not present evidence establishing that Mazza had engaged in similar misconduct, or that he was fired by the same individual, or that the individual or department that refused to rehire Tomanovich had rehired Mazza.[4] *See Snipes v. Illinois Dept. of Corr.*, 291 F.3d 460, 463 (7th Cir. 2002) (explaining that the prima facie case requires a plaintiff to "show that he is similarly situated with respect to performance, qualifications and conduct, . . . and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them") (internal quotation omitted). Accordingly, Tomanovich did not present sufficient evidence that Mazza was similarly situated. Tomanovich also did not point to any other employee (much less a similarly situated employee) who was put on a performance plan or a revised performance plan, was terminated, or was refused a reference for another job. As a result, Tomanovich did not present a prima facie case of retaliation under the indirect method for any of these claimed materially adverse actions.

---

[4] The evidence instead showed that Mazza was fired in October 2001 and subsequently rehired by the DPW operations division on December 31, 2001. Salem, however, did not become the Deputy Director of the DPW Engineering Division until early 2002, and therefore from the record it does not appear that Salem fired Mazza and then rehired him. *See Timms v. Franks*, 953 F.2d 281, 287 (7th Cir. 1992) (holding that a similarly situated employee must have been disciplined by the same decisionmaker who imposed an adverse employment action on the plaintiff).

### 3.  State Blacklisting Claim

Tomanovich also sued the City for blacklisting under Indiana Code 22-5-3-1, which provides:

> (a) A person who, after having discharged any employee from his service, prevents the discharged employee from obtaining employment with any other person commits a Class C infraction and is liable in penal damages to the discharged employee to be recovered by civil action; but this subsection does not prohibit a person from informing, in writing, any other person to whom the discharged employee has applied for employment a truthful statement of the reasons for the discharge.

> (b) An employer that discloses information about a current or former employee is immune from civil liability for the disclosure and the consequences proximately caused by the disclosure, unless it is proven by a preponderance of the evidence that the information disclosed was known to be false at the time the disclosure was made.

Ind. Code 22-5-3-1(a)(b).

The district court granted the City summary judgment on this supplemental state law claim, concluding that Tomanovich failed to present any admissible evidence that the City had provided INDOT with false information. On appeal, Tomanovich does not claim that the City provided INDOT with false information; instead he merely incorporates the arguments he made for reversal of his Title VII retaliation claim. However, without evidence that the City provided INDOT with false information, the City was entitled to summary judgment on Tomanovich's blacklisting claim.

## B.  INDOT

Tomanovich also sued INDOT for retaliation, claiming that INDOT refused to hire him in retaliation for filing EEOC charges against his former employer, the City. As with his claim against the City, Tomanovich attempts to establish his retaliation claim against INDOT under both the direct and indirect methods.

### 1.  Direct Method

Tomanovich argues that he presented sufficient evidence to avoid summary judgment on his retaliation claim under the direct method because he established a causal connection between his Title VII complaint and INDOT's refusal to hire him. As proof, Tomanovich points to the statements made by Lawrence (who worked for the City) that the City could not answer any of INDOT's questions beyond Tomanovich's dates of employment, due to pending litigation. Lawrence, however, never indicated that the pending litigation involved Title VII, and Title VII only prohibits retaliation for opposing a practice made unlawful under Title VII. 42 U.S.C. § 2000e-3(a). Tomanovich also argues that statements made by Kumar (the Deputy Commissioner with INDOT) to INDOT's Human Resources Division Chief, Trout, that there were "some issues" with INDOT hiring Tomanovich constitutes direct evidence of retaliation. There is no evidence, however, that "some issues" meant that Tomanovich had filed a charge of discrimination against the City. Tomanovich failed to present any evidence showing that INDOT knew that he had filed a complaint under Title VII. "It is not sufficient that [an employer] could or even should have known about [an employee's] complaint; [the employer] must have had

actual knowledge of the complaints for [its] decisions to be retaliatory." *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004). Because these statements do not indicate that INDOT knew of Tomanovich's Title VII complaints, Tomanovich cannot succeed on his retaliation claim against INDOT under the direct method.

### 2. Indirect Method

Tomanovich also argues that he presented sufficient evidence under the indirect method. Again, to establish a prima facie case of retaliation under the indirect method, Tomanovich must show that he: (1) engaged in a statutorily protected activity; (2) met the employer's legitimate expectations; (3) suffered a materially adverse action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Moser*, 406 F.3d at 903. However, proof of retaliation under the indirect method presupposes that the decision-maker knew that the plaintiff engaged in a statutorily protected activity, because if an employer did not know the plaintiff made any complaints, it "cannot be trying to penalize him for making them." *Shafer v. Kal Kan Foods, Inc.*, 417 F.3d 663, 664 (7th Cir. 2005). *See Durkin v. City of Chicago*, 341 F.3d 606, 614 n.4 (7th Cir. 2003) (noting that an employer's knowledge of the protected activity is implicit in the first element of the indirect method). Because, as noted, there is no evidence that INDOT knew that Tomanovich had filed Title VII complaints against the City, Tomanovich also cannot proceed under the indirect method.

Moreover, even had Tomanovich presented evidence that INDOT knew of his EEOC complaint, he nonetheless failed to establish a prima facie case. Specifically, Tomanovich did

not establish that a similarly situated employee who did not engage in statutorily protected activity was treated more favorably. Tomanovich argues otherwise, pointing to a statement by INDOT's Legal Counsel, Kelly Whiteman, that she had never encountered problems gaining information from an applicant's previous employer. This evidence, however, does not show that INDOT treated Tomanovich differently than applicants who had not filed a charge of discrimination. Rather, this evidence shows that INDOT made several attempts to verify Tomanovich's employment record. Tomanovich also argues that Risch's testimony that, in thirty years of working for INDOT, he had never been required to withdraw an offer of employment, shows that he was treated less favorably than similarly situated employees. This testimony, however, does not establish that the other applicants were similarly situated. Moreover, in this case, INDOT presented evidence that it withdrew its offer to Tomanovich because it only learned after having made the offer that Tomanovich was a candidate for City Council and under Indiana law could not be hired as an engineer. Tomanovich did not identify any other applicant who was barred by Indiana law from holding a position, but was nonetheless hired. Tomanovich also failed to present evidence of other applicants who were hired by INDOT even though INDOT could not confirm details of their prior employment. Therefore, Tomanovich did not show that INDOT treated a similarly situated applicant, who had not engaged in protected activity, more favorably.

Furthermore, even if Tomanovich had established a prima facie case, INDOT presented evidence of legitimate non-discriminatory reasons for withdrawing its job offer and not hiring Tomanovich. Specifically, INDOT presented evidence that it withdrew its employment offer only after learning that Tomanovich was a candidate for public office and

barred by state law from working as an engineer. INDOT further presented evidence that after Tomanovich withdrew his candidacy for city council, it did not hire him because it was unable to confirm details about his job performance in his previous position. Tomanovich failed to present any evidence that these proffered reasons were pretextual. Accordingly, Tomanovich's retaliation claim against INDOT cannot succeed under the indirect method, and the district court properly granted INDOT summary judgment.

### III.

Although the City fired Tomanovich after he had filed a complaint with the EEOC, Tomanovich failed to present sufficient evidence under the direct method of a causal connection between Tomanovich's protected activities and his firing, or the City's subsequent refusal to provide INDOT details on Tomanovich's work history. Tomanovich also failed to establish retaliation under the indirect method because he failed to present evidence that he was meeting the City's legitimate business expectations or that someone who was similarly situated, but who had not engaged in protected activity, was treated more favorably. Additionally, Tomanovich's state law blacklisting claim against the City fails because Tomanovich failed to present evidence that the City provided INDOT with false information. Finally, Tomanovich's retaliation claim against INDOT fails under both the direct and indirect methods, because, among other reasons, Tomanovich failed to present sufficient evidence that INDOT knew of Tomanovich's protected activities. Accordingly, the district court properly granted the defendants summary judgment. For these and the foregoing reasons, we AFFIRM.

A true Copy:

    Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*