NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued May 12, 2008
Decided June 12, 2008

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 07-3362

| | |
|---|---|
| MALA M. DAVENPORT, | Appeal from the United States |
| *Plaintiff-Appellant,* | District Court for the |
| | Northern District of Illinois, |
| *v.* | Eastern Division. |
| | |
| NORTHROP GRUMMAN SYSTEMS CORP., | No. 05 C 6061 |
| *Defendant-Appellee.* | William T. Hart, *Judge.* |

**O R D E R**

In 2001, Northrop Grumman, a manufacturer of "state-of-the-art electronic countermeasures systems and components," fell on hard times and decided to cut its workforce by a hundred employees in order to save costs.  Mala Davenport, who is African-American, was one of the hundred workers laid off.  She sued Northrop Grumman, alleging that she was terminated because of her race and in retaliation for a

complaint of racism and sexism that she had made four years earlier. The district court granted summary judgment in Northrop Grumman's favor, and Davenport appeals.

The manager of Northrop Grumman's material planning department, George Cala, had to cut four positions in his unit when the company decided to reduce its forces. Northrop Grumman has a written policy governing these reductions which requires managers to assess, based on the "current/projected business needs," the job classification and "company service unit" to be affected by the layoff, rank the employees within that group, and select the lowest performing employee for termination. According to his deposition, Cala considered the remaining work and the skill level needed to do that work and decided that one of his five program material coordinator specialists could be eliminated with minimal impact to his department. This group of five high-ranking employees, which included three African-Americans (Davenport was one) and two whites, worked throughout Cala's department and often had supervisory responsibilities. When Cala evaluated the specialists, Davenport was on the bottom of the list. A few months before Cala had been told about the layoffs, he received complaints about Davenport's work from other departments. He met twice with Davenport to discuss these complaints and to review her responsibilities, and although her performance improved after the second meeting, Cala explained in his deposition that her performance was still not up to par. Cala received no complaints about the other four specialists. Davenport's experience was also limited to only one of the organizational units in Cala's department--the main storeroom--while some of the other specialists had experience in the main storeroom, and all had worked in other units. Cala concluded that Davenport was the least versatile and decided that she should be terminated. Following her termination, Davenport's responsibilities were absorbed primarily by a white women who was Davenport's subordinate.

After Davenport's position was eliminated, she filed a grievance with Northrop Grumman, claiming that she was laid off because she is African-American and in retaliation for a complaint she had made against her former manager, Rodney Wodzien. Four years earlier, Davenport complained that Wodzien frequently cussed, yelled at many of the employees, and had made sexist and racist comments. Two other employees made similar complaints, and interviews with at least 10 employees in the department confirmed the allegations. Wodzien was formally disciplined for his "offensive remarks relating to ethnicity, age, race, and gender," stripped of his supervisory position, and put on probation. In his deposition Wodzien testified that he

did not know who lodged the complaints against him, or even if Davenport had been one of the people interviewed in the investigation.

Wodzien was chastened after his demotion--Davenport acknowledged that he ceased making racist and sexist comments. But once Cala became their supervisor in 2000, some of Wodzien's old behavior reemerged. Wodzien began bossing Davenport around, assigning her work on five or six occasions even though he was no longer her supervisor. She complained to Cala about Wodzien's overbearing ways, but Cala took Wodzien's side. In an affidavit, one of Davenport's coworkers also described Wodzien as bossy, noting that he had a habit of yelling and belittling other employees. According to that coworker, Cala and Wodzien became very close and "acted like brothers," although Cala and Wodzien described their relationship as much more limited. Cala admitted that he knew Davenport previously filed a complaint against Wodzien but stated that he did not know what the complaint was about. Cala also denied conferring with Wodzien about the layoffs.

Northrop Grumman investigated Davenport's complaint and determined that she was properly terminated in accordance with its reduction in forces procedures. After exhausting her administrative remedies, Davenport then filed this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e17 and 42 U.S.C. § 1981. Northrop Grumman moved for summary judgment, a motion that the district court granted. The district court concluded that Davenport's retaliation claim failed because she presented no evidence that Cala knew that Davenport previously filed a complaint alleging race and sex discrimination. Since Cala did not know that Davenport engaged in protected activity, the district court concluded that he could not have retaliated against her for that activity. The court also concluded that, while Davenport had established a prima facie case of race discrimination, she failed to present any evidence that Cala's reason for terminating her--that she was the weakest of the five specialists-- was a mere pretext for unlawful discrimination. Davenport appeals.

Davenport first contends that the district court erred in granting the defendant's summary judgment on her retaliation claim. We review a district court's grant of summary judgment *de novo*, drawing all reasonable inferences in favor of Davenport, the nonmoving party. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006). To succeed, Davenport must show that Cala, the decisionmaker, knew that she engaged in statutorily protected activity, otherwise no retaliatory motive can be ascribed to the defendant. *Id*. at 668-69; *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714-15 (7th Cir. 2004).

Both Cala and Wodzien state that they were unaware that Davenport complained about Wodzien's sexist and racist comments. Davenport admits, as she must, that there is no direct evidence refuting their statements. She argues instead that a reasonable jury could infer that Wodzien figured out that Davenport complained and then influenced Cala's decision to terminate her. But jumping to those conclusions crosses the line between reasonable inference and unsupported speculation. *See Dorsey v. Morgan Stanley*, 507 F.3d 624, 627-28 (7th Cir. 2007). Davenport argues that Wodzien must have suspected that she complained because she, as an African-American woman, had good reason to do so. But so did many other people; Wodzien's inappropriate remarks were expansive--covering topics of race, ethnicity, age, and gender--and widely observed. In fact, at least two other people did complain. And even if Wodzien had figured out that Davenport complained, there is no evidence that Wodzien influenced Cala's decision to lay off Davenport. Cala and Wodzien may have been chummy; Davenport's coworker observed them talking for hours at a time, and both Cala and Wodzien stated that they belonged to the same fishing club. But both denied talking about the layoffs or the investigation into Wodzien's inappropriate remarks, and their friendship alone is not enough to support an inference to the contrary.

Alternatively, Davenport suggests that Cala, who admits that he knew Davenport had previously complained about Wodzien, could have figured out on his own that she complained about Wodzien's racist and sexist behavior. But Davenport does not explain how Cala could have reached this conclusion. According to both Davenport and her coworker, Wodzien did not utter racist or sexist remarks during Cala's stint as the supervisor. Wodzien was, however, an overbearing bully, and Davenport did complain repeatedly to Cala about this behavior. But complaints about personality conflicts do not merit protection under Title VII. *See Tomanovich*, 457 F.3d at 663; *Vore v. Ind. Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994).

In any event, Cala has articulated a nondiscriminatory reason for Davenport's termination, and Davenport has failed to provide any evidence suggesting that his reason was pretextual, dooming her claims of both retaliation, *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903-04 (7th Cir. 2005), and race discrimination, *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1011-12 (7th Cir. 2004). Pretext exists where the articulated reasons for an employee's termination is a lie that masks a discriminatory motive. *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006); *Little*, 369 F.3d at 1012. An ill-considered or unreasonable decision is not pretext, so long as the decisionmaker honestly believed the reasons he gave for his choice. *Little*, 369 F.3d at 1012.

Davenport questions Cala's decision to eliminate one of the five specialists, who are among the highest graded and most knowledgeable employees in his department. To the extent Davenport challenges the wisdom of Cala's decision, her argument is a nonstarter. Cala explained that he chose to terminate one of the specialists because the remaining work could be absorbed by lower level employees, minimally impacting his department. It is not our task to review the soundness of Cala's reasoning; courts are not, as we have repeatedly reiterated, to act as a super-personnel department. *See e.g., Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006); *Brill v. Lante Corp.*, 119 F.3d 1266, 1272 (7th Cir. 1997).

But Davenport also contends that, by choosing to terminate one of the five specialists, Cala violated Northrop Grumman's written procedures for the reduction in forces. As she reads it, Cala should have measured Davenport against the other specialists in her particular organizational unit, the main storeroom, instead of against all the specialists in the material planning department. Even if this was the case--a dubious assertion since the procedures required Cala to rank employees within a "company service unit," which can include multiple organizational units--such an error in carrying out the reduction-in-forces procedure alone is not enough to show that Cala was covering up an unlawful motive. *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000) ("The truly suspicious decision would be the one reached following perfect adherence to all formal rules."). Even if Cala did not follow the layoff procedures perfectly, there is no evidence that the deviation was due to deviousness, as opposed to a simple misinterpretation of the procedure.

To survive summary judgment Davenport must do more--she must provide evidence from which a reasonable jury could conclude that the reasons Cala gave for her termination were a deliberate falsehood. *Forrester*, 453 F.3d at 419. Davenport attempts to do this by pointing to inconsistencies between Cala's testimony and other record evidence. Shifting explanations for an employee's termination are suggestive of pretext, *Simple v. Walgreen Co.*, 511 F.3d 668, 671 (7th Cir. 2007), but "the explanations must actually be shifting and inconsistent to permit an inference of mendacity." *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577-78 (7th Cir. 2003). Here, Cala consistently stated that he released Davenport because she was the least versatile and capable of the five specialists, an unsurprising conclusion given that Davenport's experience was limited to the main storeroom and that she was the only specialist about whom Cala received complaints. *See Little*, 369 F.3d at 1013 ("[T]he more objectively reasonable a belief is, the more likely it will seem that the belief was honestly held.").

The inconsistencies Davenport points to--such as the exact characterization of her experience in the main storeroom and whether her job responsibilities were spread among three junior employees or predominately absorbed by one--do not suggest that Cala's reasons for terminating her were dishonest.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.