**Opinion issued October 15, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00311-CV

_____

**RAYMOND MICHAEL LEE, Appellant**

**V.**

**HARRIS COUNTY HOSPITAL DISTRICT, Appellee**

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 1000231**

---

**MEMORANDUM OPINION**

Appellant, Raymond Michael Lee, sued his former employer, the Harris County Hospital District ("the District"), for discrimination, retaliation, and aiding and abetting discrimination under the Texas Commission on Human Rights Act ("TCHRA"). The trial court dismissed his discrimination and aiding and abetting

claims on the District's motion for summary judgment, and a jury found in favor of Lee on the retaliation claim. The trial court subsequently granted the District's motion for judgment notwithstanding the verdict ("JNOV"), rendering judgment that Lee take nothing by his claim. In a single issue, Lee argues that the trial court erred in granting the District's JNOV because the evidence was legally sufficient to establish that he opposed a discriminatory practice, that he filed a complaint, and that a causal connection existed between his complaint and his termination.

We affirm.

## Background

Lee, a licensed architect, began working for the District in February 2007 as a Senior Project Manager. Carl Johnson, the Director of Facilities and Planning, was Lee's direct supervisor. Carl's supervisor was Ron Johnson, the Vice-President of Facilities Management.

In February 2009, Lee, Carl, and Ron were returning from a meeting together when Ron and Carl discussed "an incident involving two gay [athletes] that occurred on the stretch of road they were driving on." Lee alleges that Ron and Carl "knew at the time of this discussion that [Lee] would find their remarks offensive because he is gay and they are not." Lee alleged that he reported to Carl that he "was extremely offended by the comments" and that he did so "in accordance with the [District's] policies and procedures." Lee further alleged that,

2

in response to this report, Carl and Ron "began an aggressive campaign of intimidation," advising Lee that his "type" was a "weak link" and that "hiring his type was the biggest mistake [they] had ever made."

In March 2009, Lee was involved in an incident with a co-worker in which he took a photograph of her bare feet and legs under a table without her permission. Lee alleged that Carl and Ron used this incident as a pretext for his ultimate termination in March 2009. Lee sued the District, alleging causes of action for discrimination, retaliation, and aiding and abetting discrimination.

The District moved for summary judgment on all of Lee's claims, arguing that Lee's discrimination claims failed as a matter of law because, like Title VII, the TCHRA does not extend to discrimination based on sexual orientation and because Lee could not establish a prima facie case for discrimination covered by the statute. The District also argued that Lee's retaliation claim failed because he could not establish the causal link necessary between a protected activity and the adverse employment action. It further argued that his claim for aiding and abetting discrimination also failed because Lee had submitted no evidence in support of that claim. The trial court granted summary judgment in part, dismissing Lee's claims for discrimination and aiding and abetting discrimination. Lee's claim for retaliation proceeded to trial before a jury.

3

At trial, Lee provided evidence of his evaluations during the time he worked for the District. Carl evaluated Lee in July 2007 and gave him 318 out of 400 possible points. In February 2008, Carl gave Lee 315 out of 400 possible points, and on January 23, 2009, Carl gave Lee 260 out of 400 points. On February 12, 2009, Carl also gave Lee a "counseling form" providing guidance on areas that Lee needed to improve. The form and attached memorandum discussed Lee's workload, which Carl categorized as "not excessive," and methods that Lee could use to manage his time more effectively and make other improvements in his work. Carl also informed Lee that failure to improve could eventually result in "demotion and/or termination."

Lee also provided testimony regarding the February 23, 2009 incident. According to Lee, while he was returning from a meeting with both Carl and Ron, the group drove over the 610 overpass on Highway 59 and Ron said, "Isn't this the place where the football player committed suicide, and when they did the autopsy they found one dickless and the other with a dick in his mouth?" Carl replied, "Yeah, someone from the morgue called me about that." Ron then said, "I didn't know he was like that."

Lee testified that he felt humiliated and that he "was being targeted," but he did not say so to Carl. He testified that Carl and Ron both knew, or should have known, that he was gay because he had introduced them to his longtime partner at

4

a fundraiser. Lee discussed the incident with other employees in the office, one of whom told him that he needed to report it. Lee decided that, rather than filing a written report with human resources, he would tape-record a meeting with Carl "so that [the incident] could be solved and maybe locally and not escalate, and we could just move on."

On March 10, 2009, Carl scheduled a meeting with Lee to discuss Lee's job performance relating to an on-going project that Lee was overseeing. At the end of the meeting, Lee brought the February 23 incident up with Carl. Lee testified:

> I said to Carl, this is very disturbing, and to talk about. And I was offended, extremely offended by, you know, the comments. And I said, you know, the ballplayers, one of them being dickless and one with a dick in his mouth—I was just kind of nervous. I know he replied, you need to talk to Ron about it. You need to talk to Ron.

According to the recording made by Lee, the following exchange took place:

[Lee]:      [I]t's real disturbing to talk about this. And that is when we were coming back from Wilson and Ron piped up in the car about going over the 610 pass about the football player. You know and you know, committed suicide and ended up in the—whatever—the morgue. You know one was dick and one was dickless. That was offensive to me, extremely offensive.

[Carl]:     Okay. Well, you need to have that conversation with him.

[Lee]:      No, I mean both of you were talking about it.

[Carl]:     Mmmmm—no. But you need to have that conversation with Ron.

5

[Lee]:     [talking at the same time] Right.

[Carl]:     [talking at the same time] I didn't say —

[Lee]:     You're my supervisor.

[Carl]:     Okay. So, what did I say that offended you? [inaudible, cut off]

[Lee]:     No. I mean the whole subject matter offended me.

[Carl]:     Okay. What did— [recording stops].

Lee did not bring the incident up to Carl again or ask Carl to take any kind of action. Lee testified that he was afraid of Ron and did not discuss the incident with him at all. Lee did not create a written account of the incident at this time or make any written complaint to Ron, Carl, or anyone else.

Subsequently, at a team-building meeting on March 23, 2009, one of Lee's co-workers, Linda DeClouette, shared that one of her strategies for dealing with difficult people was to put on her "power shoes." Unbeknownst to DeClouette, Lee used his cell phone to take a picture of DeClouette's bare feet and legs underneath a table, and he showed the photo to a male co-worker sitting next to him. Lee then showed the picture to DeClouette and asked if it showed her "power shoes."

DeClouette was uncomfortable with Lee's taking a picture of her feet and showing it to a co-worker without her knowledge or consent. She complained to Carl, her supervisor, who asked her to submit a written account of the incident.

6

Carl also asked Lee to provide a handwritten statement regarding the incident. The next day, on March 24, 2009, Lee asked DeClouette whether she had filed a complaint against him, and she told him that she had. Lee apologized. Meanwhile, Carl and Ron discussed the incident with human resources personnel.

On March 25, 2009, Lee attended a meeting with Carl and Ron. They provided Lee with a second employee counseling form and informed him that he was being terminated immediately based on the incident with DeClouette. Following his termination, Lee filed a formal complaint with the Equal Employment Opportunity Commission that alleged that the District had discriminated against him based on race, sex, and age and that he had been the victim of retaliation based on incidents recounted above.

The District moved for a directed verdict, arguing that Lee had failed to establish a prima facie case of retaliation because he had not shown that he had engaged in a protected activity. The trial court denied the motion for directed verdict, and the case was submitted to the jury.

Question 1 of the jury charge asked, "Did Raymond Michael Lee complain to his supervisor of conduct he reasonably believed to constitute unlawful sexual harassment and/or unlawful discrimination?" The jury was instructed regarding what constituted "reasonable belief." The jury answered, "Yes."

7

Question 2 of the jury charge asked, "Did the Harris County Hospital District discharge Raymond Michael Lee because of Raymond Michael Lee's complaint to his supervisor?" It instructed the jury that Lee "must establish that without his complaint to his supervisor, [the District's] discharge of him would not have occurred when it did. There may be more than one cause for an employment decision. [Lee] need not establish that his complaint to his supervisor was the sole cause of [the District's] discharge of him." The jury answered, "Yes."

In response to Question 3, the jury awarded Lee $102,000 in back pay as damages.

The District moved for JNOV, arguing, in part, (1) that Lee failed to show that he engaged in a protected activity because his complaint to Carl did not specify a form of discrimination made unlawful by the TCHRA and (2) that Lee failed to establish a causal connection between his alleged protected activity and his termination or (3) that the District's legitimate, non-discriminatory reason was a pretext for discrimination.

The trial court granted the District's motion for JNOV and entered a take-nothing judgment on Lee's retaliation claim. This appeal followed.

### JNOV

In his sole issue, Lee argues that the trial court erred in granting the District's motion for JNOV.

## A.     Standard of Review

A trial court may grant a motion for JNOV if a directed verdict would have been proper, and it may disregard any jury finding on a question that has no support in the evidence. Tᴇx. R. Cɪᴠ. P. 301. A trial court may disregard a jury finding and render JNOV if the finding is immaterial or if there is no evidence to support one or more of the findings on issues necessary to liability. *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994). A trial court properly enters a directed verdict (1) when a defect in the opposing party's pleadings makes them insufficient to support a judgment; (2) when the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or (3) when the evidence offered on a cause of action is insufficient to raise an issue of fact. *M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 629 (Tex. App.—Houston [14th Dist.] 1992, writ denied). In such a case, the issue should not be submitted to the jury. *See id.*

In reviewing the rendition of JNOV, the reviewing court must determine whether there is any evidence upon which the jury could have made the finding. *See Tiller*, 121 S.W.3d at 713; *see also B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 15 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (holding that we review JNOVs under no-evidence standard). The reviewing court must view the

evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005); *see Tiller*, 121 S.W.3d at 713 (holding that, in reviewing "no evidence" point, court views evidence in light that tends to support finding of disputed fact and disregards all evidence and inferences to contrary); *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001).

To sustain a challenge to the legal sufficiency of the evidence to support a jury finding, the reviewing court must find that (1) there is a complete lack of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) there is no more than a mere scintilla of evidence to prove a vital fact; or (4) the evidence conclusively established the opposite of a vital fact. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 903 (Tex. 2004).

## B. The TCHRA

Under the TCHRA, an employer may not discriminate against or discharge an employee based on "race, color, disability, religion, sex, national origin, or age." TEX. LAB. CODE ANN. § 21.051(1) (Vernon 2006). The TCHRA is modeled after federal civil rights law. *Id.* § 21.001(1) (Vernon 2006) (stating that one express purpose of act is to "provide for the execution of the policies of Title VII

of the Civil Rights Act of 1964 and its subsequent amendments"); *Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 295 (Tex. App.—Corpus Christi 2000, pet. denied). Thus, we look to analogous federal precedent for guidance when interpreting the TCHRA. *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999); *Lane*, 31 S.W.3d at 295.

In a retaliation action brought under the TCHRA, a plaintiff is required to establish that (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. TEX. LAB. CODE ANN. § 21.055 (Vernon 2006) (providing examples of protected activities); *Dias v. Goodman Mfg. Co.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (stating elements of retaliation claim); *Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723, 730 (Tex. App.—Fort Worth 2006, no pet.) (stating same). Protected activities consist of (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in an investigation, proceeding, or hearing. TEX. LAB. CODE ANN. § 21.055; *Dias*, 214 S.W.3d at 676.

First, to establish that he opposed a discriminatory practice, the employee must demonstrate a good faith belief that the employer's underlying discriminatory practice violated the law. *Cox & Smith, Inc. v. Cook*, 974 S.W.2d 217, 224 (Tex. App.—San Antonio 1998, pet. denied) (citing *Payne v. McLemore's Wholesale &*

11

*Retail Stores*, 654 F.2d 1130, 1140–41 (5th Cir. 1981)). The employee is not required to prove an actual unlawful practice; he must only show that he held a reasonable, good faith belief that the employer engaged in an activity made unlawful by Title VII or the TCHRA. *Id.*; *see also Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) (per curiam) (holding that anti-retaliation statute shields employee from retaliation regardless of merit of his complaints so long as he can show good faith, reasonable belief that challenged practice was unlawful).

Second, the employee must demonstrate that he reported the challenged activity to the employer. *Cook*, 974 S.W.2d at 224. Filing a grievance or making an informal complaint can constitute a protected activity. *See Lane*, 31 S.W.3d at 296 (holding that informal complaint to supervisor of sexual harassment was protected "complaint" for purposes of section 21.055(3)); *see also Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008) (noting that "[p]rotected opposition can range from filing formal charges to voicing informal complaints to superiors"). However, "[a] vague charge of discrimination will not invoke protection under [the TCHRA]." *Spinks v. Trugreen Landcare, L.L.C.*, 322 F. Supp.2d 784, 797 (S.D. Tex. 2004); *see Azubuike v. Fiesta Mart, Inc.*, 970 S.W.2d 60, 65 (Tex. App.—Houston [14th Dist.] 1998, no pet.) ("A vague charge of discrimination will not invoke protection under the statute."). Not every incident

12

of rude or offensive behavior implicates Title VII or the TCHRA. *See Evans v. Tex. Dep't of Transp.*, 547 F. Supp. 2d 626, 654–55 (E.D. Tex. 2007) (citing *Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 539 (5th Cir. 1998) (commenting that not every insult, slight, or unpleasantness gives rise to valid Title VII claim)), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405 (2006).

Thus, for a complaint filed with an employer to constitute a protected activity, "the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006); *see Morrison v. Dallas Cnty. Cmty. Coll.*, 273 F. App'x 407, 410 n.3 (5th Cir. 2008) (per curiam) (citing *Tomanovich* with approval). "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Tomanovich*, 457 F.3d at 663. A complaint of unfair treatment and harassment does not "put the employer on notice that [the employee's] complaint was based on . . . sexual discrimination." *Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (per curiam).

13

## C. Analysis

Here, Lee argued that he engaged in a protected activity when he complained to Carl about the February 23, 2009 comments regarding the football player's suicide. However, Lee's statement to Carl, as represented in his testimony at trial and in the recording of his meeting with Carl, revealed only that Lee found the comments "extremely offensive." Citing rude or offensive behavior, by itself, does not put an employer on notice of a complaint implicating the TCHRA. *See Webb*, 139 F.3d at 539; *Harris-Childs*, 169 F. App'x at 916. Lee did not make any charge of discrimination against Carl or Ron during this conversation, much less a "vague charge of discrimination"; indeed, he did not refer to discrimination at all. *See Azubuike*, 970 S.W.2d at 65 ("A vague charge of discrimination will not invoke protection under the statute."). Lee did not suggest in his conversation with Carl that Carl's or Ron's conduct was related to his own sexual orientation or any characteristic protected by the TCHRA. *See Evans*, 547 F. Supp. 2d at 654 ("Specifically, although Evans complained of a purportedly hostile work environment, at no time did she suggest that McCray's conduct was related to Evans's race, sex, age, disability, or other characteristic protected by Title VII.").

Lee argues that he was not required "to use legal terms or buzzwords when opposing discrimination." *See Yanowitz v. L'Oreal USA, Inc.*, 116 P.3d 1123, 1134 (Cal. 2005). However, the employee's complaint must be specific enough to

put the employer on notice that it was based on some form of discrimination the employee reasonably believed was prohibited by the TCHRA. *See Tomanovich*, 457 F.3d at 663.

Lee also argues that we must look to the context of his complaint in determining whether it was a complaint for purposes of section 21.055(3). *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1335 (2011) (analyzing antiretaliation provision of Fair Labor Standards Act); *see also Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 577 (5th Cir. 2004) (holding that analysis under FLSA employs same analytical framework as Title VII). The *Kasten* Court held, "To fall within the scope of the antiretaliation provision [of the FLSA], a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." 131 S. Ct. at 1335. Assuming, without deciding, that this reasoning applies here, it does not support Lee's argument.

As we have already discussed, Lee's statement to Carl that he was extremely offended by the story Ron told regarding the circumstances surrounding the football player's suicide is not sufficiently clear or detailed, or directly related to Lee's employment, for a reasonable employer to understand it as an assertion of rights under the TCHRA. Examining Lee's statement in light of the content and

context does not alter this conclusion. Lee made the statement that he was offended by Ron's and Carl's comments in the context of a meeting that Carl had requested to evaluate Lee's job performance relating to an on-going project. This context would not put a reasonable employer on notice that the employee was asserting rights under the TCHRA. The content of Lee's comments to Carl addressed a story regarding the suicide and apparent sexual orientation of a third person who was not known personally to any of the people involved in this lawsuit. Lee did not request that Carl take any action based on his complaint, nor did Lee himself take any further action based on his complaint until later, after he had been terminated. Even crediting Lee's assertion that he presented some evidence that Carl was aware of his sexual orientation, nothing in the context or content of Lee's verbal statement connected his own sexual orientation with the discussion. *See Tomanovich*, 457 F.3d at 663.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the trial court properly granted a JNOV because Lee presented no evidence that he had engaged in a protected activity—i.e., by filing a complaint of sexual discrimination—under the TCHRA. *See City of Keller*, 168 S.W.3d at 822. In the absence of a statutorily protected activity, there can be no cognizable retaliation claim under the TCHRA. *See Dias*, 214 S.W.3d at 676. Thus, we

16

conclude that the trial court did not err in granting the District's motion for JNOV on this ground. *See* TEX. R. CIV. P. 301; *Ramirez*, 159 S.W.3d at 903.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Bland.