In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1716

BRENDA O'NEAL,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:07-cv-04788—**Charles P. Kocoras**, *Judge.*

ARGUED OCTOBER 6, 2009—DECIDED NOVEMBER 17, 2009

Before BAUER, WOOD and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Sergeant Brenda O'Neal has twice sued her employer, the Chicago Police Department ("CPD"), this time claiming retaliation and sex discrimination under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* The district court granted summary judgment to the CPD, as it had done before in O'Neal's first employment discrimination suit. *See O'Neal v. City of Chicago*, 392 F.3d 909 (7th Cir. 2004). We

have reviewed the district court's decision de novo construing all facts and reasonable inferences in O'Neal's favor; finding no error, we affirm.

## I. BACKGROUND

Brenda O'Neal began her career as a police officer for the CPD in 1991, and was promoted to sergeant in 2001. In May 2002, O'Neal was transferred from the Narcotics unit to one of the police districts. O'Neal sued the CPD in November 2002, claiming that this transfer violated Title VII's prohibition against race and gender discrimination. The district court granted the CPD's motion for summary judgment and this court affirmed. *O'Neal*, 392 F.3d 909.

After O'Neal filed her 2002 lawsuit, the CPD transferred her back to Narcotics per a settlement of a dispute over O'Neal's collective bargaining agreement. Since then, the CPD has transferred or detailed ("reassigned") O'Neal ten times among seven other units: the Training Academy, Patrol Administration, Operational Services Administration, the Fifth District, Asset Forfeiture, Vice Control, and the Third District. Each new reassignment involved different responsibilities, most entailed a new supervisor, some required different hours, and all prompted O'Neal to complain to her union, claiming the reassignments hurt her promotion prospects and were in retaliation for her 2002 lawsuit.

On August 14, 2007, O'Neal initiated this case against the CPD, after first filing a discrimination charge on

June 28, 2007, with the Equal Employment Opportunity Commission ("EEOC"). The CPD and O'Neal engaged in discovery and the CPD moved for summary judgment. The district court entered summary judgment in favor of the CPD on February 17, 2009, and O'Neal timely filed this appeal.

## II. DISCUSSION

As a threshold matter, O'Neal may sue the CPD only for the last two transfers, to Vice Control in November 2006 and to the Third District in June 2007. The earlier eight reassignments are time-barred because they predate O'Neal's EEOC charge by more than three hundred days. *See* 42 U.S.C. § 2000e-5(e)(1). Nor need we consider whether all ten reassignments constitute one continuing adverse employment action, because O'Neal failed to make this argument on appeal. *See, e.g., Luellen v. City of E. Chicago*, 350 F.3d 604, 612 (7th Cir. 2003) (arguments not raised on appeal are waived). Hence, the first eight reassignments are time-barred and may be considered only as "background evidence" of the last two actionable transfers. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

We review the district court's grant of summary judgment de novo, construing all facts and reasonable inferences in O'Neal's favor. *Winsley v. Cook County*, 563 F.3d 598, 602 (7th Cir. 2009). Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material

fact such that the CPD is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c).

## A. Retaliation

To survive summary judgment on her retaliation claim, O'Neal needed to present evidence that, if believed by a trier of fact, would show (1) that she engaged in an activity protected by Title VII; (2) that she suffered an adverse action taken by the CPD; and (3) a causal connection between the two, under either the direct or indirect method of proof. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662-63 (7th Cir. 2006); *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 642-44. O'Neal succeeds on the first two elements but fails on the third.

First, O'Neal engaged in two activities protected by Title VII: filing her employment discrimination lawsuit in 2002 and filing her grievance for retaliation in 2006. *See* 42 U.S.C. § 2000e-3(a) (defining statutorily protected activity to include participating in a Title VII proceeding or opposing a practice made unlawful by Title VII). (By contrast, it did not constitute statutorily protected activity when O'Neal complained in 2007 to Commander O'Donnell that Lieutenant Kusinski tolerated insubordination by police officers under O'Neal's command, because her complaints failed to indicate that the behavior was discriminatory. *Tomanovich*, 457 F.3d at 663; *see* O'Neal Letters of May 1 & 8, 2007; O'Neal Dep. at 313:1-3.)

Second, O'Neal adduced sufficient evidence of an adverse employment action. An adverse employment

action is one that "well might have dissuaded a rea-sonable worker from making or supporting a charge of discrimination." *Tomanovich*, 457 F.3d at 664 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). A lateral job transfer within an organization may constitute an adverse employment action, for exam-ple, if it reduces the employee's "opportunities for future advancement." *Nichols v. S. Ill. Univ.—Edwardsville*, 510 F.3d 772, 781 (7th Cir. 2007). Commander Wiberg testified that repetitive reassignments "would negatively affect [one's] ability to be promoted from a police sergeant to a lieutenant on the basis of a meritorious promotion." Wiberg Dep. at 23-24. And indeed, the two actionable transfers were "repetitive," considering as background evidence the previous eight reassignments. Therefore, although the CPD asks us to discredit Com-mander Wiberg's testimony as "speculation," Appellee's Br. at 27, we find that it raises an issue of fact with regard to O'Neal's two actionable transfers being adverse employment actions. *Cf. O'Neal*, 392 F.3d at 912 (finding no issue of fact where O'Neal had failed to present any evidence that the transfer could "ultimately diminish her chances for promotion").

Third, O'Neal provided insufficient evidence that she suffered an adverse employment action because she engaged in statutorily protected activity, *i.e.*, that either of her two actionable transfers occurred because of her 2002 lawsuit or her 2006 grievance. Under the direct method of proof, O'Neal offered evidence only of a causal connection between the 2002 lawsuit and the transfer from Vice Control. This evidence consisted only

of Lieutenant Kusinski, who recommended O'Neal's transfer, (1) calling O'Neal a "complainer" and other similar names, Dunn Dep. at 129:24; and (2) referring to O'Neal as previously "dating a gang banger"—rumors of which prompted O'Neal's initial transfer out of Narcotics, which in turn prompted O'Neal to file her 2002 lawsuit. *Id.* at 89:7-10. These statements, made without reference to O'Neal's 2002 lawsuit and made before O'Neal arrived in Vice Control, constitute neither direct evidence nor a "convincing mosaic of circumstantial evidence" that the CPD transferred O'Neal out of Vice Control because of the 2002 lawsuit seven months later. *Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 903 (7th Cir. 2006).

Nor did O'Neal provide sufficient evidence to establish a causal connection under the indirect method of proof. Under the indirect method, O'Neal needed to present evidence that she met the CPD's legitimate expectations, that she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity, and that any nondiscriminatory reasons offered by the CPD for her two actionable transfers were pretextual. *See Tomanovich*, 457 F.3d at 666; *Stone*, 281 F.3d at 644. O'Neal fails under this method because she provided insufficient evidence that she was meeting the CPD's legitimate expectations. Specifically, she failed to rebut the CPD's assertion that O'Neal was borderline insubordinate, had a confrontational attitude, and suffered from an inability to conduct street operations that "jeopardized the safety of [an] undercover officer." Kusinski Dep. at 100:14-15. Instead of

addressing these particular criticisms, O'Neal responded that she was a good officer in other respects, pointing to her high efficiency rankings, Appellant's Reply at 14; that other sergeants were treated more favorably without reference to whether they exhibited the same faults, *id.* at 13; and that her performance was "unblemished." *Id.* at 14. Nowhere in her briefs, however, does O'Neal deny her insubordination, confrontational attitude, and putting an undercover officer in jeopardy by poorly conducting street operations. Indeed, nowhere in the record are these performance issues contradicted, despite O'Neal's numerous citations attempting to do so. *See* Plaintiff's Response to Defendant's Rule 56.1 Statement of Facts at 23-24. O'Neal thus presented insufficient evidence for a reasonable jury to find that she was meeting the CPD's legitimate business expectations, and therefore her 2007 transfer was retaliatory.

### B. Sex Discrimination

O'Neal fails on her sex discrimination claim for the same reason as her retaliation claim: she failed to adduce any evidence indicating that her actionable transfers were because of her sex. Indeed, O'Neal's briefs focus exclusively on the retaliation claim, and O'Neal's attorney conceded at oral argument that the sex discrimination claim has no merit.

### III.  CONCLUSION

For the reasons discussed above, we AFFIRM the district court's grant of summary judgment on O'Neal's employment discrimination claims.