NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 16, 2010[*]
Decided June 16,  2010

*By the Court:*

No. 08-2632

| | |
|---|---|
| KENIKA M. THREATT,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Northern District of Illinois,<br>Eastern Division. |
|    *v.* | |
| | No. 06 C 3944 |
| SHAUN DONOVAN,<br>Secretary of Housing and Urban<br>Development,<br>    *Defendant-Appellee.* | Marvin E. Aspen,<br>*Judge.* |

## O R D E R

Kenika Threatt claims in this lawsuit that she was fired from her job with the United States Department of Housing and Urban Development ("HUD") because of her gender and her past allegations of discrimination. *See* 42 U.S.C. §§ 2000e-16(a), 2000e-3(a).  The district court concluded that Threatt had not submitted sufficient evidence of either discrimination or retaliation and granted summary judgment in HUD's favor.  Threatt appeals, and we affirm the judgment.

At the outset we note that Threatt failed to comply with Rule 56.1 of the local rules for the Northern District of Illinois when she responded to HUD's motion for summary judgment.  That rule requires a party opposing summary judgment to submit a concise

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

response to each of the movant's proposed facts and to make specific references to the record in the case of any disagreement. Instead of providing specific responses to HUD's factual presentation, Threatt's submission directed the court to a separate document she dubbed "Plaintiff's Statement of Material Facts in Dispute," which lacks record citations and is largely unsupported by admissible evidence. The district court disregarded the statement but considered the supporting documents to the extent that they are material and admissible. Threatt challenges this decision on appeal, but the district court was well within its discretion to demand compliance with the local rules. *See Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 359-60 (7th Cir. 2009). Accordingly, our version of the facts mirrors the one adopted by the district court, although we construe the facts in the light most favorable to Threatt. *See Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 563 (7th Cir. 2009).

Threatt began working as an economic-development specialist in HUD's Office of Community Planning and Development in July 2000. She initially reported to the agency's Washington, D.C., headquarters but was stationed at its midwestern regional office in Chicago, Illinois, where she was supervised locally by Victor Thornton, the director of that office. From the outset Threatt butted heads with Thornton and his second-in-command, Ray Willis, and in August 2002 she filed a charge with the agency's Equal Employment Opportunity ("EEO") office accusing both men of sex discrimination. She alleged, among other things, that Thornton constantly monitored her breaks and attendance, reassigned her duties to male coworkers including Willis, and belittled and undermined her at staff meetings. After a formal investigation, HUD concluded in December 2004 that Threatt had not been discriminated against on the basis of her sex and that any perceived mistreatment had arisen instead from the lack of clear delineation of her responsibilities as a headquarters employee stationed in Chicago. Threatt did not seek review of the decision.

In the meantime, Threatt had filed a second EEO charge with HUD in October 2004. After an institutional reorganization, Threatt now reported directly to management in the Chicago office; her direct supervisor, Alice Hamilton, reported to Willis, who by then had succeeded Thornton as director of the office. In the new charge, Threatt alleged that Willis had retaliated against her for filing the first charge. She cited a number of specific instances of alleged retaliation, but the agency discounted some as untimely and others as too insignificant to constitute adverse actions. The agency, however, investigated her remaining claim that Willis had unfairly accused her of being "absent without leave" after she did not show up for work one morning in August 2004. Threatt and two male coworkers were scheduled to travel to an out-of-town conference later that day, and Willis had warned all three by e-mail the previous week that he expected them to be at work in the morning. All of them ignored his warning, however, and when they returned from the conference, Willis instructed them to submit leave requests for the hours they had missed.

Threatt's coworkers complied, but Threatt refused, and so Willis designated the time as absence without leave. After another investigation, the agency concluded in March 2006 that Willis's action had not been retaliatory because it was too attenuated from Threatt's EEO charge more than two years earlier and that, in any event, Willis had a legitimate, nonretaliatory explanation for what he did. Moreover, the investigation revealed that, within a month of the incident, Hamilton had granted Threatt three hours of leave without charging her account, effectively negating Willis's action.

This time, Threatt responded with a lawsuit. She filed her complaint pro se in July 2006 and, after obtaining counsel, amended it in September 2006. HUD moved to dismiss as untimely the discrimination claim arising from Threatt's first administrative complaint because she had not filed her lawsuit within 90 days of receiving the final agency decision. *See* 42 U.S.C. § 2000e-16(c). The district court granted the motion in March 2007 but allowed Threatt to go forward based on the events alleged in her second EEO charge. That charge had been limited to a theory of retaliation, but in her lawsuit Threatt proceeded as if it also included a claim of discrimination.

While the lawsuit was pending, HUD fired Threatt in May 2007. Earlier in the year Hamilton had given her notice that the agency was considering termination. The notice included a detailed chronology of events leading up to the proposed discharge, beginning with a June 2006 performance appraisal of "unacceptable" for the previous year. In conjunction with that evaluation, Hamilton had placed Threatt on a 90-day "opportunity-to-improve" plan to remedy, among other things, what Hamilton described as poorly prepared and untimely work, lack of professionalism, failure to meet established workload objectives, and noncompliance with agency policies. According to Hamilton's notice of proposed termination, Threatt had failed to remedy these shortcomings by the end of the 90 days. The notice also stated that the ultimate termination decision would rest with Willis, but after Threatt's union representative contested Willis's ability to act impartially, HUD instead left the decision to Ronald Herbert, a director at HUD's headquarters and Willis's boss. Herbert independently reviewed Threatt's performance and greenlighted her termination. After exhausting her administrative remedies, Threatt amended her complaint in the district court to include retaliatory discharge.

With respect to Threatt's allegations of discrimination, the district court concluded that she had not submitted any evidence which would permit an inference that the allegedly adverse actions were motivated by her sex. And as far as Threatt's allegations of retaliation, the district court concluded that Herbert's role as the final decisionmaker foreclosed any inference of a causal relationship between Threatt's protected activity and her termination.

We review de novo the district court's grant of summary judgment.  *O'Neal v. City of Chicago*, 588 F.3d 406, 409 (7th Cir. 2009).  On appeal Threatt focuses on her allegations of retaliation, but to the extent that she also presses a theory of sex discrimination, we agree with the district court that it was proper to grant summary judgment to HUD.  A plaintiff alleging sex discrimination can proceed using either the "direct method" of proof, which requires direct or circumstantial evidence creating a "convincing mosaic of discrimination," or the "indirect method," which requires evidence that (1) she was meeting her employer's legitimate expectations, (2) she was subject to a materially adverse employment action, and (3) her employer treated similarly situated male employees more favorably.  *Coffman*, 578 F.3d at 563; *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 591-92 (7th Cir. 2008).  Threatt never produced evidence that similarly situated male coworkers received better treatment, so she was left to prove her case using the direct method.  *See Winsley v. Cook County*, 563 F.3d 598, 606 (7th Cir. 2009).  As the district court concluded, however, Threatt failed to present any evidence linking HUD's alleged mistreatment to her sex.  A viable discrimination claim requires more than a difference in sex between employee and supervisor, but Threatt proved nothing more than that.  *See Coffman*, 578 F.3d at 564.

That leaves Threatt's retaliation theory.  Here, too, she failed to present evidence of a similarly situated employee who did not engage in activity protected by Title VII and received superior treatment, and so her only hope of success was under the direct method of proof.  *See Everroad v. Scott Truck Sys., Inc.*, 2010 WL 1838315, at *8 (7th Cir. May 10, 2010).  To prevail under that approach, Threatt needed to demonstrate that she engaged in statutorily protected activity, she suffered an adverse employment action, and there was a causal connection between the two events.  *Id.*

It is undisputed that Threatt engaged in statutorily protected activity when she lodged multiple administrative complaints and filed this lawsuit.  *See* 42 U.S.C. § 2000e-3(a); *O'Neal*, 588 F.3d at 409.  With respect to the requirement that she suffered an adverse employment action, Threatt points to a number of workplace incidents she believes were improper, but most are too insignificant to sustain a retaliation claim.  For example, Threatt submitted evidence at summary judgment that Willis belittled her in front of coworkers, excessively scrutinized her work, and subjected her to lengthy disciplinary meetings.  It is not enough, however, that Willis's behavior may have created an unpleasant work environment; an adverse employment action for purposes of Title VII is one that significantly alters the terms and conditions of employment, and none of these alleged indignities resulted in a tangible job consequence.  *See Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (noting that reprimand without any immediate consequence does not qualify as adverse action); *Griffin v. Potter*, 356 F.3d 824, 829-30 (7th Cir. 2004) (concluding that supervisor's remarks that plaintiff was a "'bad influence on the office'" and "thought she knew everything" did not amount to adverse action); *Oest v. Ill. Dep't of Corr.*, 240 F.3d

605, 613 (7th Cir. 2001) (explaining that criticism and reprimands alone are not materially adverse). Threatt also mentions that Willis terminated her "telework privilege," but she did not submit any evidence regarding this allegedly adverse action, and so we cannot conclude that it materially altered the terms and conditions of her employment. Finally, Threatt spends much of her brief renewing her argument that she suffered an adverse action when Willis charged her with two hours of being absent without leave, but this incident had such a negligible effect on her income that it cannot be considered adverse. *See Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 301-02 (7th Cir. 2004) (holding that employer's refusal to pay employee for two-day absence does not qualify as adverse employment action); *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004) (explaining that being marked absent without pay on one occasion is not materially adverse). In any event, the evidence at summary judgment demonstrated that Willis treated Threatt no differently than the two coworkers she traveled with.

Threatt, however, eventually was fired, and that undoubtedly qualifies as an adverse employment action. But, once again, the problem with Threatt's case is that she never presented evidence to suggest a causal connection between her protected activity and either the termination or the negative performance review that served as its basis. Her subjective assessment that her performance was satisfactory is not evidence that Hamilton's negative evaluation was incorrect, let alone retaliatory. *See Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 739-40 (7th Cir. 2006). Although suspicious timing can create a triable issue in extreme cases, *see Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (concluding that there was triable issue on retaliatory motive where plaintiff was fired one day after protected activity), the timing here was not so questionable as to suggest retaliation was the driving force. Although Hamilton notified Threatt of the agency's intent to fire her in January 2007, while this lawsuit was pending in the district court, the buildup to her termination had been a long time in the making. She received her first negative performance rating in April 2005, six months after filing her then-most-recent EEO charge, and received a second one in June 2006, a month before filing her lawsuit. With the June 2006 rating of "unacceptable," Threatt was given 90 days to improve her performance; Hamilton concluded that she failed to make the required changes, and Threatt offered no evidence at summary judgment to indicate otherwise.

Finally, as the district court explained, Threatt's theory of retaliation is further undercut by the fact that Herbert, an independent decisionmaker, called the final shot in her termination. Threatt argues that Herbert's decision was tainted by Hamilton's negative evaluations, but she presented no evidence to cast doubt on Herbert's testimony that he

performed an independent evaluation of her work and came to his own conclusion about whether to terminate her. *See Martino v. MCI Communs. Servs.*, 574 F.3d 447, 452-53 (7th Cir. 2009).

The judgment of the district court is AFFIRMED.