IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 15, 2008

Charles R. Fulbruge III
Clerk

No. 07-10917
Summary Calendar

BRENNAN MORRISON

Plaintiff - Appellant

v.

DALLAS COUNTY COMMUNITY COLLEGE; BRENT DUDENHOEFFER,
in his individual and official capacity

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
No. 3:05-cv-01821

Before STEWART, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff Brennan Morrison argues that fact questions should have prevented the grant of summary judgment in favor of Defendants Dallas County Community College District and Brent Dudenhoeffer on his race discrimination and retaliation claims, brought in part under Title VII of the 1964 Civil Rights Act, and his defamation claim under Texas state law. The Defendants allege

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

that the appeal is frivolous and seek imposition of sanctions. We affirm the grant of summary judgment but deny the Defendants' motion for sanctions.

## I. Facts and Procedural Background

Brennan Morrison, an African American male, was employed by the Dallas County Community College District (the "District") as a Natatorium Supervisor, i.e., the supervisor of an indoor swimming facility. The facility is at North Lake College in Irving, Texas, where Morrison was employed from November 2003 to February 2005. His supervisors were Brent Dudenhoeffer, an Assistant Dean at North Lake College, and Walter Ritchie, the City of Irving's Superintendent of Parks, Athletics and Acquatics.[1] As Natatorium Supervisor, Morrison was responsible for oversight of all services, including supervision of pool staff.

At some point, Dudenhoeffer began to raise concerns regarding Morrison's job performance. Morrison responded with complaints that the requirement that he report to two supervisors caused confusion and inhibited his job performance. The District responded by requiring Dudenhoeffer and Morrison to have weekly progress meetings with two other North Lake College staff members beginning in October 2004. The meetings provided opportunities for Dudenhoeffer to explain Morrison's reporting and job responsibilities, and for Morrison to raise specific concerns regarding his duties. Morrison's job performance allegedly continued to fall below the District's expectations. During the months of October and November 2004, Morrison received several written reprimands and memoranda detailing the District's expectations.

On December 8, 2004, the District decided to respond to Morrison's continued job-related deficiencies by placing him on "decision-making leave."

---

[1] The Natatorium is operated as a partnership among the District, the City of Irving, and the Irving Independent School District. The agreement governing the Natatorium empowered the District to hire the Supervisor (Morrison's position) according to District hiring guidelines. Once hired, the Supervisor would report to both the City Aquatic Supervisor (Ritchie's position) and an administrator designated by the District (Dudenhoeffer).

District policy provides that employees with significant on-going deficiencies receive one day of paid leave followed by a probationary period. Failure to improve past deficiencies during the probationary period could result in the employee's termination. On December 13, 2004, Morrison filed a grievance against Dudenhoeffer in accordance with the District's internal grievance procedure. On December 15, 2004, Dudenhoeffer informed Morrison that he was being placed on "decision-making leave" for one day and provided Morrison with documentation for this decision in accordance with the District's policy.

Morrison returned to work on December 17, 2004. However, he received two reprimands in January 2005 and was terminated on February 17, 2005, for "ongoing job performance deficiencies." Morrison appealed his termination to the President of North Lake College, alleging it to be discriminatory, and filed a charge of discrimination with the Equal Employment Opportunity Commission. Thereafter, Morrison filed suit in the district court. He now appeals that court's grant of summary judgment in favor of Defendants.

## II. Discrimination and Defamation Claims

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. Greenwell v. State Farm Mut. Auto Ins. Co., 486 F.3d 840, 841 (5th Cir. 2007). Summary judgment may be granted only if there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## A. Discrimination Claim

Morrison has not offered direct evidence of discrimination; therefore, we analyze his claim under the familiar burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973); McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007). Because the District terminated Morrison's employment, he satisfies the requirements for a prima facie case under this

framework.[2] However, the District offered several legitimate, nondiscriminatory reasons for its decision to terminate Morrison. The District cites Morrison's poor job performance generally and, more specifically, his failure to submit timely and accurate time sheets, making unapproved modifications to his work hours, failure to submit leave forms for his absences, and scheduling special events at the Natatorium without proper notification. The burden shifted back to Morrison to demonstrate (1) that the defendants' proffered reasons are not true (pretext theory) or (2) even if the reasons are true, the defendants' decision was motivated in part by Morrison's race (mixed-motive theory). Rachid v. Jack in the Box, 376 F.3d 305, 312 (5th Cir. 2004).

Morrison first argues that the District's proffered reasons are "simply pretext" and "verifiably false." To support this argument, Morrison suggests that Dudenhoeffer's trustworthiness is "questionable," argues that he was not given an opportunity to refute Dudenhoeffer's allegations of deficient job performance, asserts that his other supervisor, Ritchie, did not understand Dudenhoeffer's concerns over Morrison's performance, and Ritchie would have approved a more flexible schedule for Morrison. But none of these assertions verify the allegation of falsity; Morrison points to no record evidence that would demonstrate pretext. Therefore, Morrison has failed to put forth evidence that would rebut any of the District's proffered legitimate nondiscriminatory reasons. See Wallace v. Methodist Hosp. System, 271 F.3d 212, 220 (5th Cir. 2001).

Morrison also attacks the District's decision to terminate him under the mixed-motive theory, arguing that he was treated differently than underperforming white employees because of his race. However, Morrison has not shown that these employees were given preferential treatment under

---

[2] As did the district court, we reject Morrison's argument that the District's decision to place him on one day of paid decision-making leave constitutes an "adverse employment action" for purposes of establishing a prima facie case of discrimination under the McDonnell Douglas framework. McCoy, 492 F.3d at 559-60.

circumstances "nearly identical" to his own. See Okoye v. Univ. of Texas Houston Health Science Center, 245 F.3d 507, 514 (5th Cir. 2001). He offers three examples of alleged "differential" treatment. One employee was not disciplined despite watching pornographic material at work; another was not disciplined despite being caught asleep on the job. These violations of District policy are wholly dissimilar to those committed by Morrison. Finally, he alleges that a white employee at the Natatorium engaged in time sheet violations but was not disciplined or terminated; however, this employee's infractions were not discovered until after her resignation, precluding the District from taking any disciplinary action against her. These comparisons do not support an inference of racially motivated decision-making by the District. See id. at 514-15.

The District has articulated several legitimate nondiscriminatory reasons for its decision to terminate Morrison. Morrison has failed to rebut these proffered reasons with record evidence. Thus, his claim for discrimination under Title VII fails.

B.    Retaliation Claim

Morrison alleges that the District's decision to place him on decision-making leave and terminate him both constitute retaliatory acts under Title VII. In order to establish a prima facie case of retaliation, Morrison must show that (1) he engaged in protected activity, (2) he experienced an adverse employment action following the protected activity, and (3) a causal link between the protected activity and the adverse employment action. McCoy, 492 F.3d at 556-57. If a prima facie case of retaliation is established, the McDonnell Douglas burden-shifting framework is employed. Id. at 557.

We accept Morrison's argument that he engaged in protected activity when he orally complained of race-based discrimination to Dudenhoeffer's supervisor

on December 13, 2004.[3] Morrison also alleges that both his placement on one day of paid decision-making leave and his termination constitute adverse employment actions. Even were we to make the generous assumption that placing an employee on one day of paid leave is an adverse employment action, Morrison fails to establish the requisite causal link between his lodging the oral complaint and the District's decision to place him on leave. Undisputed record evidence shows that the decision to place Morrison on leave was made on December 8, five days prior to Morrison's voicing his complaint.

Morrison's termination occurred approximately two months after his oral complaint. Assuming this two-month time period is sufficient to establish a causal link and satisfy the elements of Morrison's prima facie case, the District explained that the termination was a result of documented job performance deficiencies that occurred during Morrison's post-leave probationary period. "[O]nce the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997).

On appeal, Morrison asserts that he "can surely make his prima facie case of retaliation;" this may be, but he just as surely fails to offer any evidence that would rebut the District's proffered nondiscriminatory reasons for his termination. Morrison's subjective belief that he was treated unfairly, even Ritchie's alleged belief that Morrison was treated unfairly, is not sufficient to

---

[3] We assume that this allegation – taken from Morrison's deposition testimony – is true. We note, however, that Morrison also filed a written grievance on the same day. The written grievance made no mention of race and gave no indication that Morrison believed he was opposing racially-motivated actions by Dudenhoeffer or the District. As the district court correctly noted, the written grievance does not constitute protected activity. See Tomanovich v. City of Indianapolis, 457 F.3d 656, 663 (7th Cir. 2006) ("Although filing an official complaint with an employer may constitute statutorily protected activity under Title VII, the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class.").

rebut the specific nondiscriminatory reasons offered by the District. Little v. Republic Refining Co., Ltd., 924 F.2d 93, 96 (5th Cir. 1991).

For these reasons, Morrison's Title VII retaliation claim also fails.

C.    Defamation Claim

Finally, Morrison claims that Dudenhoeffer defamed him by telling a third party that Morrison was terminated for fighting. Texas law recognizes slander per se and slander per quod. Moore v. Waldrop, 166 S.W.3d 380, 384 (Tex. App. 2005). Morrison argues that Dudenhoeffer's statement constitutes slander per se because it caused injury to his office, business or profession. See id.

The district court properly rejected this argument. In order to constitute slander per se under this analysis, a statement must be "so obviously harmful" to the defendant's professional reputation that damages may be presumed. See e.g., Shearson Lehman Hutton, Inv. v. Tucker, 806 S.W.2d 914, 921 (Tex. App. 1991) (statement suggesting that stock broker would lose his license was slanderous per se "because it is aimed at his conduct as a licensed stockbroker and it asserts a matter incompatible with his practicing that profession"); Bradbury v. Scott, 788 S.W.2d 31, 38 (Tex. App. 1989) ("To charge an employee with dishonesty in his dealings with his employer is slanderous per se . . . ."). Dudenhoeffer's alleged statement does not rise to the level of "so obviously harmful" to Morrison's occupation or profession that a court may presume he has suffered damages.

Thus, Morrison must prove that his reputation was actually damaged as a result of Dudenhoeffer's statement. Moore, 166 S.W.3d at 384. The district court found that Morrison had offered no evidence of actual damages. On appeal, Morrison does not dispute this finding. Instead, he suggests only that the district court misapplied the law because "[i]n a defamation per se context, damages are presumed without proof of injury." As noted above, Dudenhoeffer's statements were not per se defamatory. Because Morrison fails to point us to

7

any evidence of actual damage, we conclude that the district court properly granted summary judgment to Dudenhoeffer on Morrison's defamation claim.

In light of the forgoing, we AFFIRM the district court's grant of summary judgment to the District and Dudenhoeffer.

### III. Motion for Sanctions

The District and Dudenhoeffer move this Court to impose sanctions on Morrison for pursuing this appeal, which they describe as frivolous. This Court has the discretion to penalize frivolous appeals by awarding "just damages and single or double costs to the appellee." Fed. R. App. P. 38. "An appeal is frivolous if the result is obvious or the arguments of error are wholly without merit." Coghlan v. Starkey, 852 F.2d 806, 810-11 (5th Cir. 1988). Under Rule 38, we may impose sanctions on the client, his counsel, or both. Id. at 818. Morrison responds that he should not be sanctioned because (1) discrimination cases are inherently fact-based and this precludes a finding that his appeal is wholly without merit and (2) an appeal based on a "questionable legal position" is not frivolous if "the underlying litigation is complex or confusing."

First, although we recognize that employment discrimination cases are generally fact-intensive, there is nothing inherently complex or confusing about Morrison's claims. In fact, the McDonnell Douglas framework was developed over thirty years ago in order to clarify and simplify the burdens of production and persuasion in discrimination cases. That framework is routinely applied by federal courts to claims such as Morrison's. Second, the fact-intensive nature of an employment discrimination suit does not relieve a litigant from his responsibility to pursue only those legal claims that are justified by the facts. Walker v. City of Bogalusa, 168 F.3d 237, 241 (5th Cir. 1999).

In addition, Morrison's brief to this Court essentially ignores the findings and rationale of the district court. Morrison embarks upon a factual recitation and legal analysis of his case that gives no indication as to which facts and legal

arguments the district court credited, and which ones it rejected. More importantly, Morrison does not tell this Court with any specificity why the district court erred in applying the law to the facts of his case. Our de novo standard of review on summary judgment appeals does not render the district court's decision irrelevant. It should come as no surprise that "failing to explain how the trial court erred or to present cogent or clear arguments for reversal" may warrant sanctions under Rule 38. Abbs v. Principi, 237 F.3d 1342, 1345 (Fed. Cir. 2001).

Morrison's counsel also treads very close to blatant misrepresentations of the record; at best, counsel is guilty of gross mistakes in citations to the record. For example, the brief asserts that Morrison's decision-making leave day was not paid time off, as the District represented. First, this fact was irrelevant to the district court's decision and, therefore, not a material fact for summary judgment purposes. The district court concluded that the timing of the District's decision to place Morrison on leave (and not the compensated or uncompensated nature of that leave) precluded Morrison from relying on the leave day for purposes of establishing a prima facie case of retaliation. Second, Morrison purports to support this argument with no less than eight citations to the record. Not one of these eight record citations even mentions the decision-making leave day, much less supports Morrison's proposition that it was unpaid leave.

In another example, Morrison attributes the following direct quote to Ritchie: "you could tell by the tone in Dudenhoeffer's voice it was about race." The record reveals that this is a loose – and borderline misleading – paraphrase of Ritchie's testimony, not a direct quote. Morrison also cites Ritchie's deposition testimony for the proposition that Ritchie believed Morrison was being treated unfairly because of race. In fact, Ritchie's deposition testimony establishes only that Morrison complained to Ritchie that Morrison believed he was being treated unfairly because of race. Significant misrepresentations of the record and

9

selectively quoting from the record in a manner that would seriously mislead the reviewing court may constitute sanctionable conduct.  See Williams v. Phillips Petroleum Co., 23 F.3d 930, 940-41 (5th Cir. 1994).

Morrison's appeal lacks merit, but this does not necessitate a finding of frivolousness.  Coghlan, 852 F.2d at 810 n.10.  We are mindful of the chilling effect that the imposition of sanctions could have on other litigants.  See id. at 810-11; Abbs, 237 F.3d at 1346.  We are presented with a very close case for sanctions.  Morrison and his counsel's failure to engage the reasoning of the district court, be this a legal strategy or simply careless preparation, is an unhelpful method of appeal.  We also note our serious concern regarding counsel's careless and arguably misleading citations to the record. While we are dissatisfied with counsel's approach to this appeal, we are unable to say that the appeal is so "wholly without merit" as to warrant sanctions.

Therefore, the District and Dudenhoeffer's motion for sanctions is DENIED.  The summary judgment is AFFIRMED.