[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12244
_____

D.C. Docket No. 1:13-cv-00051-WLS-TQL-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DONTERIUS TOOMBS,

Defendant-Appellant.
_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(September 4, 2018)

Before TJOFLAT and JORDAN, Circuit Judges, and HUCK,[*] District Judge.

---

[*] Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

PER CURIAM:

A grand jury indicted Donterius Toombs and others[1] on one count of conspiracy to possess powder cocaine and crack cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 846 and 841.  After a jury convicted Mr. Toombs, the district court sentenced him to twenty years of imprisonment and ten years of supervised release.

Mr. Toombs contends that he was entitled to acquittal, a new trial, or resentencing on several grounds: because the evidence was insufficient to prove conspiracy; because the evidence and argument confused the jury by showing the existence of another conspiracy separate from the one charged in the indictment; because the district court imposed a statutory sentence enhancement even though the government failed to adhere to mandatory procedures in seeking the enhancement; and because the government sought the enhancement as punishment for his exercising of the right to trial by jury.

Having reviewed the record, and with the benefit of oral argument, we affirm.

---

[1] One of those other defendants was Stephon Williams, whose appeal, No. 15-12130, we heard together with Mr. Toombs'.   We decide Mr. Williams' appeal in a separate opinion.

## I

Our review on sufficiency is *de novo*. *See United States v. Foster*, 878 F.3d 1297, 1303 (11th Cir. 2018). We view the trial evidence, however, in the light most favorable to the government. *See United States v. Bacon*, 598 F.3d 772, 775 (11th Cir. 2010) (sufficiency of the evidence); *United States v. Edouard*, 485 F.3d 1324, 1347 (11th Cir. 2007) (material variance/multiple conspiracies).

## A

On November 12, 2013, a grand jury indicted Mr. Toombs and others on one count of participation in a conspiracy involving twenty named individuals and other unnamed individuals to possess cocaine and crack cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(ii), (iii). It also indicted Mr. Toombs on a count of aiding and abetting the distribution of crack cocaine, but the government ultimately dismissed this charge. In September of 2014, the government filed an sentence-enhancement notice under 21 U.S.C. § 851 as to Mr. Toombs.

In October of 2014, Mr. Toombs and Mr. Williams proceeded to trial. The jury heard testimony from more than a dozen witnesses, including a number of alleged coconspirators. The evidence reflected the following.

3

**B**

In Georgia, from approximately 2010 through 2012, a group of individuals—with one named Curtis Donaldson at the center—agreed to work together to distribute cocaine to their overlapping customer bases. To further this goal, the coconspirators took on various and shifting roles in fulfilling the necessary tasks, including lending money to each other to purchase drugs from suppliers, going to suppliers and purchasing drugs, transporting drugs to a "headquarters" and cooking them there, monitoring for and communicating about law enforcement activity to avoid detection, selling drugs, and conducting accounting of relevant financial transactions.

**1**

At times, Mr. Donaldson left Mr. Toombs in possession of his drugs with the intent that Mr. Toombs would sell the drugs on Mr. Donaldson's behalf and for their mutual benefit. In these instances, Mr. Donaldson and Mr. Toombs agreed that Mr. Toombs would make money by marking up the prices of the drugs over Mr. Donaldson's prices and keeping the difference. This Mr. Toombs did. Mr. Toombs sometimes worked with other coconspirators in conducting these sales or sold to other coconspirators.

Mr. Toombs also engaged in other activities in furtherance of the drug-distribution goal he shared with Mr. Donaldson and others. He once called

4

Mr. Donaldson to warn him that police were in his area. Another time, Mr. Toombs lent money to Mr. Donaldson with the understanding that he would be repaid in cocaine. During a wiretapped phone call, Mr. Toombs ordered—and Mr. Donaldson ultimately sold him—3.8 ounces of crack cocaine, which Mr. Donaldson estimated sufficed for Mr. Toombs to make about 15 individual sales at $20 apiece. Mr. Toombs also made at least two other drug orders on the phone and about five or six more orders in person, each of up to a half ounce at a time. Mr. Toombs bought this crack cocaine intending to resell it. Other coconspirators sold or "fronted" drugs to Mr. Toombs or saw Mr. Toombs purchase drugs from Mr. Donaldson.

**2**

The testimony of Tyree Bennett corroborated other sources of evidence describing the drug-distribution conspiracy alleged in the indictment. For example, Mr. Bennett testified about the general way that a drug-distribution conspiracy operates, about the types and quantities of drugs distributed in connection with the conspiracy described in the indictment, and about the roles or duties of certain individuals in that conspiracy. His testimony indicated that he obtained drugs from Willie Curry and Mr. Donaldson, among others. It also indicated that he knew Mr. Toombs since they were about twelve years old, that (with Mr. Toombs) he dealt drugs that the two obtained from Mr. Donaldson and

5

others named in the Donaldson conspiracy until he was incarcerated in late 2011, and that Mr. Toombs and Mr. Donaldson continued selling drugs to Mr. Bennett's customers when Mr. Bennett was incarcerated.

## C

A jury ultimately convicted Mr. Toombs. The district court sentenced him to twenty years' imprisonment—the minimum term of imprisonment required pursuant to the § 851 notices that the government filed—followed by ten years' supervised release.

## II

We now address Mr. Toombs' arguments in turn.

## A

Mr. Toombs concedes that the evidence adduced at trial sufficed for a jury to find that he bought illegal drugs. But he contends that it was insufficient for a jury to find him guilty of conspiracy and that certain evidence proffered by the government affirmatively proved there was no conspiracy. We disagree.

As we have stated before:

> For a conviction of conspiracy to distribute drugs in violation of 21 U.S.C. § 846, the government must present evidence to prove the following elements beyond a reasonable doubt: (1) a conspiracy (or agreement) existed between Defendants or between Defendants and others; (2) Defendants knew the essential objects of the conspiracy, which are to do either an unlawful act or a lawful act by unlawful means; and (3) Defendants knowingly and voluntarily participated in the conspiracy. . . . [B]ecause a conspiracy is predominantly mental in

6

composition, circumstantial evidence is frequently resorted to in order to prove its elements. The trier of fact may infer a conspiracy from a concert of action.

*United States v. Holt*, 777 F.3d 1234, 1259 (11th Cir. 2015) (internal citations and quotation marks omitted).

Mr. Toombs preserved his sufficiency argument with a motion for judgment of acquittal. We therefore review this claim *de novo*, but view the evidence in the light most favorable to the government. *See Bacon*, 598 F.3d at 775.

The government's theory of the case was that Mr. Donaldson and others agreed to work together to maintain an ongoing supply of powder cocaine and crack cocaine and to distribute these drugs to their overlapping customer bases. To further this goal, the coconspirators took on various roles in handling necessary tasks, including lending money to coconspirators who would purchase the drugs from suppliers, going to those suppliers to purchase the drugs, transporting the drugs to headquarters, cooking crack cocaine, monitoring for and communicating about law enforcement activity to avoid detection, making sales, and accounting for drug transactions.

The evidence at trial sufficed for a jury to conclude beyond a reasonable doubt that Mr. Toombs was guilty because it showed that he understood, agreed to, and followed through on an agreement with Mr. Donaldson and others to distribute illegal drugs. As the facts summarized above reflect, Mr. Toombs engaged in

significant drug-distribution activity with Mr. Donaldson and others. That activity included (1) being tasked with, and fulfilling, the duty of keeping Mr. Donaldson's drugs safe under his guard, (2) selling Mr. Donaldson's drugs for his own and Mr. Donaldson's benefit, (3) warning Mr. Donaldson of the presence of law enforcement officers nearby, (4) lending money to Mr. Donaldson with the expectation of being repaid in drugs, and (5) approximately seven to nine times, buying drugs from Mr. Donaldson with the intent to resell them.

Mr. Toombs makes several arguments in support of his contention that the evidence presented was insufficient. None of them, however, directly grapples with the full weight of the evidence proffered against him, and all of them ultimately miss the mark.

First, Mr. Toombs points out that certain bits of evidence among those proffered by the government were not sufficient to convict him. But he misdirects these arguments. Rather than dealing with the facts in the record as a whole and viewing them in the light most favorable to the government, he mistakenly focuses on whether one or another "singular [action] is insufficient to establish the existence of a conspiracy." *United States v. Johnson*, 592 F.3d 749, 757 (7th Cir. 2010). Alas, because there was not simply one item of proof standing alone, it is simply irrelevant whether indeed one such item, standing alone, sufficed to convict him.

Second, he points out that certain kinds of evidence were *not* among what the government proffered and were required to prove his guilt. Mr. Toombs again misreads *Johnson*. This out-of-circuit case does not *per se* require the kinds of evidence that Mr. Toombs claims were missing, but only cites those kinds of evidence as "examples" of what would meet the government's burden to produce "*some evidence* from which the jury can distinguish a conspiracy from a mere buyer-seller relationship." *Id*. at 755, 758. Assuming that a jury was required to draw the *Johnson* distinction here, the evidence enumerated above supported such a finding.

Third, Mr. Toombs points to some evidence which purportedly undermined the government's case. Even if we assume that each of Mr. Toombs' factual contentions about the evidence has support in the record, *and* if we were to interpret the cited evidence in the light most favorable to him, it was trivial enough that a jury could discredit it and convict him on the rest.

But, anyhow, none of the purported facts necessarily points in the direction of Mr. Toombs' innocence. These facts purportedly include, for example, that (1) Mr. Toombs shorted one of Mr. Donaldson's customers, (2) Mr. Donaldson referred two customers to Mr. Toombs and did not directly profit from these referrals, (3) Mr. Toombs once declined to receive a referral from Mr. Donaldson, and (4) Mr. Donaldson once instructed an intermediary to sell drugs to Mr. Toombs

rather than giving Mr. Toombs direct access to his drugs. These bits of evidence no more require a jury to acquit Mr. Toombs of conspiracy than a jury would have to find that a bank employee without keys to the vault, or a poorly performing one, or one with her hand in the till, was no employee at all. That is, agreements have limits and the parties to agreements sometimes breach them, so evidence of a limit or a breach does not necessarily show that no agreement existed. Thus, given that *other* evidence sufficed to support a jury finding that an agreement existed, the presence of these facts did not require a reasonable jury to conclude to the contrary.

In sum, the evidence was enough to convict Mr. Toombs of the charged conspiracy.

**B**

Mr. Toombs argues that, assuming there was sufficient evidence for the jury to conclude that he was guilty of conspiracy, there was a prejudicial "material variance" from the charged conspiracy to the one (or two) reflected by the evidence. Specifically, Mr. Toombs contends that a government witness, "Mr. Bennett[,] had a separate drug organization that also operated in the Southwest Georgia area." Toombs' Br. at 9. The government, he says, presented "an extraordinary amount of evidence" about this separate conspiracy, Toombs'

10

Reply at 2, and "repeatedly referenc[ed]" it, Toombs' Br. at 19, which led the jury to convict him of something other than the crime with which he was charged.

The government has not argued that Mr. Toombs failed to preserve this argument, so we review the issue *de novo*. *See United States v. Sullivan*, 522 F.3d 967, 980 (9th Cir. 2008).

We have not found support for Mr. Toombs' argument in the record. If the evidence is viewed in a certain way, there may indeed have been a separate scheme with an imperfectly overlapping cast of characters. But Mr. Toombs cites to no evidence or argument that a jury was required to interpret as necessarily establishing a separate conspiracy—let alone so much such evidence that a material variance occurred.

To establish reversible error based on a material variance, Mr. Toombs must prove two things. First, like other sufficiency-of-the-evidence arguments, this argument requires him to show that no "reasonable trier of fact could have found beyond a reasonable doubt" what the government purported to prove here— namely, "the existence of the single conspiracy charged in the indictment." *United States v. Starrett*, 55 F.3d 1525, 1553 (11th Cir. 1995) (internal quotation marks omitted). Specifically, what Mr. Toombs needs to show is that the jury was *required* to conclude that the government had "prove[d] multiple conspiracies under an indictment alleging only a single conspiracy." *United States v. Castro*, 89

11

F.3d 1443, 1450 (11th Cir. 1996).   Second, having shown that the jury was required to conclude that multiple conspiracies existed, Mr. Toombs must then show that he suffered "substantial prejudice"—i.e., "either (1) that the proof at trial differ[ed] so greatly from the charges in the indictment that [he] was unfairly surprised and had an inadequate opportunity to prepare a defense, or (2) that due to the number of defendants in the case, and the number of predicate acts charged, there is a substantial likelihood that the jury transferred evidence from one defendant to another."   *Starrett*, 55 F.3d at 1553 (internal quotation marks omitted).

Mr. Toombs' material variance argument fails because the factual contentions on which it is based are not supported by the parts of the record that Mr. Toombs cites.   Indeed, Mr. Toombs' attorney's unsupported contentions are myriad.   For example, immediately following the critical (and basic) proposition that "Mr. Bennett had a separate drug organization that also operated in the Southwest Georgia area" is a single citation—to "Doc. 323-164."   Toombs' Br. at 9.   Neither the cited page nor those adjacent support this proposition at all.

Instead, the cited page states that "basically every day" in 2011 (during the time period that the indictment charges), Mr. Bennett and Mr. Toombs "dealt drugs and hung together," describes from whom Mr. Bennett was then purchasing his drugs and how much he was selling, and says that Mr. Bennett's named suppliers

12

include Mr. Curry and Mr. Donaldson (who, incidentally, are two of the coconspirators alleged in Mr. Toombs' indictment).

Likewise, Mr. Toombs claims that "[i]n its Opening Statement, the government began by giving the jury extensive information about Mr. Toombs' alleged involvement in [Mr.] Bennett's conspiracy." Toombs' Br. at 18 (citing D.E. 331 at 34–38). But the cited pages of the transcript reflect that Mr. Toombs and Mr. Bennett were working *in concert with others in the indicted conspiracy* to advance their mutual goal of distributing illegal drugs.

This lack of record support is a problem for Mr. Toombs. When a litigant makes an argument without providing valid citations to the record, we may reject it on that basis alone. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). For other reasons, too, it is critical to give proper citations to the record and to take care not to make any misrepresentations about what the record reflects. Procedural and ethical rules require such care. *See Nat'l Alliance for Mentally Ill, St. Johns Inc. v. Bd. of Cnty. Comm'rs of St. Johns Cnty.*, 376 F.3d 1292, 1295 (11th Cir. 2004) (quoting Fed. R. App. P. 28(a)(9)(A)); Fed. R. App. P. 46(b)(1)(B); Fed. R. Civ. P. 11(b)(3); *Morrison v. Dallas Cnty. Cmty. Coll.*, 273 F. App'x 407, 412 (5th Cir. 2008); *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1153 (10th Cir. 2007).

13

Although we could deem this argument forfeited, we have still searched the record, but have been unable to find facts to bear the necessary weight. That is, we have reviewed Mr. Toombs' record citations and more, and have found no evidence that specifically indicates that any witness connected Mr. Toombs to activity that was involved with a conspiracy separate from the one charged. There is evidence (and opening or closing argument mentions) of Mr. Toombs' association with individuals charged in another case—as we discuss below—and even some passing reference to the other case, but none of what we have found meets Mr. Toombs' burden at this stage. This failure is enough to reject the whole argument.

What the cited parts of the record (including the opening and closing arguments) *do* indicate is, in summary, as follows. Mr. Bennett and Mr. Toombs have known each other since they were approximately twelve years old. They dealt powder and crack cocaine together until a law enforcement agency detained Mr. Bennett in late 2011, at which point Mr. Toombs continued dealing to his and Mr. Bennett's customers. When dealing drugs together, the two obtained some of their product from Mr. Donaldson and others involved in the charged "Donaldson conspiracy."

The foregoing facts are probative of the charged conspiracy.  Accordingly, a reasonable jury was certainly not required to find that Mr. Toombs participated in a second, uncharged conspiracy, and there was no material variance.

## C

Mr. Toombs also argues that the government's evidence required the district court to give the jury a "multiple conspiracies" charge.  Because Mr. Toombs raises this error for the first time on appeal, the question is whether it was error not to give the charge *sua sponte*, and we review only for plain error.  *See United States v. Hughes*, 840 F.3d 1368, 1384 (11th Cir. 2016).

This argument fails because, as with the "material variance" issue that we discussed above, to prevail here Mr. Toombs must show that no reasonable jury could have found that the government proved the single conspiracy charged.  *See United States v. Gonzalez*, 940 F.2d 1413, 1422 n.17 (11th Cir. 1991).  As we have just explained, he has not shown that no reasonable jury could come to this conclusion.  Accordingly, we reject this argument.

## D

Additionally, Mr. Toombs argues that, because the government failed to adhere to certain procedures, the district court erred in applying a sentencing enhancement to him under 21 U.S.C. § 851.  Specifically, § 851 provides that, in certain cases, prescribed statutory minimum sentences will apply for repeat

15

offenders, but only if the government "files an information with the court (and *serves a copy of such information* on the person or counsel for the person)." 21 U.S.C. § 851(a) (emphasis added). Mr. Toombs claims that the government failed to complete service as required because it only e-filed the information. The government has not argued that Mr. Toombs failed to preserve this argument, so "[w]e review [it] de novo." *United States v. Ladson*, 643 F.3d 1335, 1341 (11th Cir. 2011).

Mr. Toombs concedes that service "via the court's CM/ECF system [is permissible] if the local rules allow[ ] for service via the court's transmission facilities," Toombs' Br. at 35, but argues that the relevant local rules do not include the district court's CM/ECF procedures. As far as the particular procedure at issue here is concerned, we disagree.

In the Middle District of Georgia, filing a document electronically for a given case constitutes service on all users registered as participants in that case. The Middle District of Georgia's CM/ECF procedures establish the following:

### Service and Notice

Whenever a pleading or other document is filed electronically, CM/ECF will generate a Notice of Electronic Filing (NEF). The NEF will serve as a receipt evidencing that the pleadings or other documents have been filed and docketed. The NEF is the official notice of the filing to all registered participants and includes the text of the docket entry, as well as a link to the filed document. *If the recipient is a participant in CM/ECF, generation of the NEF is the*

16

*equivalent of service by first class mail.* Service by electronic means is complete on transmission.

If the recipient is not a participant in CM/ECF, service must be made under the Federal Rules of Civil and Criminal Procedure. . . .

*CM/ECF Administrative Procedures for Filing, Signing, and Verifying Documents by Electronic Means*, http://www.gamd.uscourts.gov/sites/gamd/files/Administra tiveProceduresElectronicFiling.pdf (last visited Dec. 5, 2017) (emphasis added).

The Middle District of Georgia appears generally to treat these procedures as rules, and the particular CM/ECF procedure at issue here is effectively a corollary of the elementary proposition that attorneys are required to review the filings in their cases, so we comfortably treat it as a court rule. *See, e.g.,* M.D. Ga. L.R. 5.0(A) ("The instructions for filing civil and criminal pleadings electronically in CM/ECF can be found in the 'Administrative Procedures for Filing, Signing, and Verifying Documents by Electronic Means' available on the Court's website."). *See also Chiacchiarini v. Lowndes Cnty., Ga.*, No. 7:17-cv-2, 2017 WL 2951606, at *3 (M.D. Ga. July 10, 2017) (determining a party's rights by deciding whether an attorney complied with another requirement in this same set of CM/ECF procedures).

Here, Mr. Toombs' attorney was admitted to practice before the district court, entered a notice of appearance electronically in the case on November 22, 2013—becoming a registered user in the case who consented to service via

17

CM/ECF filing no later than that date[2]—and remained Mr. Toombs' attorney well past September 19, 2014, the date that the government filed the notice in question. Accordingly, the government satisfied § 851's service requirement here.

**E**

Mr. Toombs next argues that the government's filing of the § 851 notice was improper because it contravened a Department of Justice policy memorandum[3] and functioned as punishment for the exercise of his right to a jury trial. A plain-error standard of review applies to this claim, which is raised for the first time on appeal, although the argument fails even if we review it *de novo*. *See* Fed. R. Crim. P. 12(b)(3)(A)(iv); *United States v. Sperrazza*, 804 F.3d 1113, 1118–19 (11th Cir. 2015); *United States v. Mangaroo*, 504 F.3d 1350, 1353 (11th Cir. 2007).

Mr. Toombs cannot rely on the internal Department of Justice policy memorandum to which he refers because, rather than establishing binding norms, the memorandum leaves prosecutors "free to consider the individual facts in the various cases that arise." *Ryder Truck Lines, Inc. v. United States*, 716 F.2d 1369, 1377 (11th Cir. 1983). *See also United States v. Wasserman*, 504 F.2d 1012, 1016

---

[2] *See Petition for Admission to Plead and Practice*, http://www.gamd.uscourts.gov/sites/gamd/files/forms/AtyAdmissionForm.pdf (last visited Dec. 5, 2017).

[3] *See* Memorandum from the Attorney General to the United States Attorneys and Assistant Attorney General for the Criminal Division (Aug. 12, 2013), https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/ag-memo-department-policypon-charging-mandatory-minimum-sentences-recidivist-enhancements-in-certain-drugcases.pdf (last visited Dec. 19, 2017).

18

(5th Cir. 1974) ("find[ing] no basis for prohibiting prosecutions which violate internal Department of Justice policy memoranda" and therefore rejecting contention that the government prosecuted the defendants "in contravention of a Department of Justice policy memorandum"); *United States v. Strong*, 844 F.3d 133, 136 (2d Cir. 2016) (rejecting precisely Mr. Toombs' argument as to the same DOJ memo).

Mr. Toombs' argument about the government's punishing him for exercising his right to a jury trial fails too. Notwithstanding its recognition that "punish[ing] a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort," *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978), the Supreme Court has held that the government may freely encourage criminal defendants to plead guilty "in the 'give-and-take' of plea bargaining" by offering "a lenient sentence or a reduction of charges" for pleading guilty or by dangling increased penalties or additional charges for failing to plead guilty. *Id*. at 363. *See also id*. at 361 (observing that the two situations are "[a]s a practical matter . . . no different"). To hold to the contrary, *Bordenkircher* observed, "would contradict the very premises that underlie the concept of plea bargaining itself." *Id*. at 365. Consequently, other courts of appeals have uniformly rejected challenges such as the one Mr. Toombs raises here. *See United States v. Kent*, 649 F.3d 906, 913 (9th Cir. 2011); *United States v. Jenkins*, 537 F.3d 1, 5 (1st Cir.

2008); *United States v. Morsley*, 64 F.3d 907, 920 (4th Cir. 1995); *United States v. Mosley*, 14 F.3d 54 (5th Cir. 1994). We do as well.

Assuming without deciding that Mr. Toombs' "§ 851 enhancement in this case created a gross sentencing disparity with equally culpable co-conspirators," Toombs' Br. at 39, this does not affect our conclusion. Implicit in the reasoning in *Bordenkircher* is that it is acceptable for someone who decides to go to trial to receive a greater punishment than someone who decides to plead guilty.

There may be certain circumstances in which, when the government "without notice br[ings] an additional and more serious charge" after failed plea negotiations, a defense of vindictive prosecution may prevail. *See, e.g., Bordenkircher*, 434 U.S. at 360 & n.5. Mr. Toombs has not, however, argued (or presented evidence showing) that this is such a case.

Accordingly, we reject Mr. Toombs' challenges to the government's invocation of the sentencing enhancement available via information under § 851.

**F**

Mr. Toombs' briefs contain some remarks which his counsel might have intended as additional arguments. For example, Mr. Toombs complains in passing that certain witness testimony was not corroborated. And he notes elsewhere that "[n]o physical evidence of drugs . . . that could be attributed to Mr. Toombs" was introduced, and that the evidence instead "consisted solely of the testimony of

20

convicted drug dealers who[se] . . . sentences . . . were . . . reduced in exchange for their testimony." Toombs' Br. at 10. Occasionally, he says that the court erred in "admitting [certain] evidence." *Id*. at 15. One time, he says that certain evidence was "bad character evidence prohibited by FRE 404(a)(1)." *Id*. at 21. These passing remarks, unsupported by case law or meaningful argumentation, do not properly raise any additional arguments. *See Sapuppo*, 739 F.3d at 681. Accordingly, we do not address them here.

### III

Finding no reversible error in the district court record, we affirm Mr. Toombs' conviction and sentence.

**AFFIRMED.**

21